**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

ANDREW KUZNYETSOV, CHARLES BOAL AND
MARTHANN HEILMAN,

|  |  |
|---|---|
| *Plaintiffs,* | Civil Action |
| v. | No. 09-CV-379 |
| WEST PENN ALLEGHENY HEALTH SYSTEM, INC., ET AL., | |
| *Defendants.* | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED NOTICE TO AFFECTED EMPLOYEES

### PRELIMINARY STATEMENT

The United States Supreme Court has directed district courts to ensure that employees receive "accurate and timely" notice of a pending Fair Labor Standards Act ("FLSA") action. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Plaintiffs seek that *Hoffmann-LaRoche* notice through this motion.

It is important that employees be immediately informed of the case, and provided with an opportunity to opt-in even before any discovery is conducted, because the statute of limitations is running on their recovery: their claims "die daily" until they opt-into the lawsuit. *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 260 (S.D.N.Y. 1997).

Plaintiffs' need only make a minimal showing that employees are "similarly situated" in order for notice to be sent. This low burden correlates with both the important rights at stake and the fact that such rights are being extinguished on a daily basis. Now is *not* the time to decide which party will ultimately succeed on the merits but only whether employees

are similarly situated such that they should receive court-authorized notice about this case to allow them to make an informed decision on whether to opt-in and protect their rights.[1]

Plaintiffs easily meet their modest burden for sending court-authorized notice. By operation of defendants' Meal Break Deduction Policy, hourly employees automatically lose one-half hour of pay each work day for a meal period even though they are performing work during their meal periods. Thus, this policy violates the FLSA.

Therefore, pursuant to *Hoffmann-LaRoche*, all of defendants' hourly employees should receive notice of this action.

## FACTS

The named plaintiffs (Andrew Kuznyetsov, Charles Boal and Marthann Heilman), joined by scores of other current and former employees, filed this action against West Penn Allegheny Health System, Inc., and the other defendants (the "defendants") as a collective action under the FLSA, 29 U.S.C. § 216(b).

In particular, pursuant to the Meal Break Deduction Policy, defendants deduct one-half hour from employees' pay each day employees work for a meal break. However, because the defendants do not ensure that employees stop working during that break – and on the contrary ask the employees to work during that time – employees end up working thousands of hours a year for which they receive no pay.

The statements from plaintiffs submitted with this motion discuss the operation and application of the Meal Break Deduction Policy. Plaintiffs confirm[2] that they are subject to the Meal Break Deduction Policy.[3]

---

[1]    Through this motion, plaintiffs only seek certification pursuant to the FLSA. Plaintiffs will seek class certification pursuant to Rule 23 in accordance with the Local Rules or this Court's Order through a subsequent motion.

Given the nature of defendants' 24/7 health care operations, at every moment there are a host of immediate needs that require the attention of all levels of hourly employees whether they are on break or not.[4]  Because of those needs, the defendants expect hourly employees to be available to work throughout their shift and consistently requires employees to work during their meal break – it does not take any efforts to stop employees from working during their meal breaks.[5]  Further, employees are not relieved by other employees when their break comes or asked to leave their work location.  They are instead required to respond to pages even if they are on their meal break.[6]  Therefore, it is an everyday occurrence that lunches are interrupted by work and the employees do not receive a full, uninterrupted 30 minute meal break.[7]  Instead, employees continue about their regular duties and are not paid for their meal breaks even though they are working for defendants. [8]

---

[2]     All affirmations referenced herein as attached to the Affirmation of J. Nelson Thomas, sworn to April 1, 2009 ("Thomas Aff.").

[3]     Affirmation of Andrew Kuznyetsov, sworn to January 19, 2009 attached as Exhibit F to the Thomas Aff. ("Kuznyetsov Aff.") ¶¶ 3, 5, 6, 38; Affirmation of Charles Boal, sworn to January 31, 2009 attached as Exhibit G to the Thomas Aff. ("Boal Aff.") ¶¶ 3, 5, 6, 39; Affirmation of Marthann Heilman, sworn to January 19, 2009 attached as Exhibit H to the Thomas Aff. ("Heilman Aff.") ¶¶ 3, 5, 6, 39; Affirmation of Annamarie Finucan sworn to February 10, 2009 attached as Exhibit I to the Thomas Aff. ("Finucan Aff.") ¶¶ 3, 5, 6, 39; Affirmation of Daranette Smiley-McKeithen, sworn to January 2009 attached as Exhibit J to the Thomas Aff. ("Smiley-McKeithen Aff.") ¶¶ 3, 5, 6, 39; Affirmation of Maxine Thomas, sworn to February 5, 2009 attached as Exhibit K to the Thomas Aff. ("M. Thomas Aff.") ¶¶ 3, 5, 6, 39.

[4]     Kuznyetsov Aff. ¶ 7, Boal Aff. ¶ 7, Heilman Aff. ¶ 7, Finucan Aff. ¶ 7, Smiley-McKeithen Aff. ¶ 7, M.Thomas Aff. ¶ 7.

[5]     Kuznyetsov Aff. ¶¶ 8, 9, Boal Aff. ¶¶ 8, 9, Heilman Aff. ¶¶ 8, 9, Finucan Aff. ¶¶ 8, 9, Smiley-McKeithen Aff. ¶¶ 8, 9, M.Thomas Aff. ¶¶ 8, 9.

[6]     Kuznyetsov Aff. ¶¶ 9, 10, Boal Aff. ¶¶ 9, 10, Heilman Aff. ¶¶ 9, 10, Finucan Aff. ¶¶ 9, 10, Smiley-McKeithen Aff. ¶¶ 9, 10, M.Thomas Aff. ¶¶ 9, 10.

[7]     Kuznyetsov Aff. ¶¶ 13, 25, Boal Aff. ¶¶ 13, 25, Heilman Aff. ¶¶ 13, 25, Finucan Aff. ¶¶ 13, 24, Smiley-McKeithen Aff. ¶ 23, M.Thomas Aff. ¶ 23.

[8]     Kuznyetsov Aff. ¶ 13, Boal Aff. ¶ 13, Heilman Aff. ¶ 13, Finucan Aff. ¶ 13.

Employees eat their meals while working because they never have time for a meal break due to the defendants' demands.[9]

In addition to the 24/7 nature of defendants' operations, the problem also stems from the defendants' demands and short staffing, requiring employees to continue their work duties during all or part of their unpaid meal "break."[10]  Defendants for years have been reducing staffing which imposes larger and larger burdens on all levels of hourly employees to respond to the needs of the defendants, especially given the importance of the work that needs to be preformed, regardless of whether they are on a meal break.[11]  Thus, the facilities are so hectic that employees have no time whatsoever to take full, unpaid meal breaks.[12]

As a further way to cut costs, defendants also pressure employees to keep overtime hours down, resulting in employees not being paid for all the hours they worked.[13]  Overall, although plaintiffs appreciate that it is vital for the efficient operation of defendants' locations that employees work during their meal breaks, the question remains why the defendants refuse to compensate employees when they are working during their meal break.[14]

Under these circumstances, defendants clearly know employees continued to perform work during meal breaks.  In fact, managers see the work being performed during meal breaks

---

[9]     Boal Aff. ¶ 34, Heilman Aff. ¶ 34, Finucan Aff. ¶ 34, Smiley-McKeithen Aff. ¶ 34, M.Thomas Aff. ¶ 34.

[10]    Kuznyetsov Aff. ¶ 12, Boal Aff. ¶ 12, Heilman Aff. ¶ 12, Finucan Aff. ¶ 12, Smiley-McKeithen Aff. ¶ 12, M.Thomas Aff. ¶ 12.

[11]    Kuznyetsov Aff. ¶¶ 14, 15, 41, Boal Aff. ¶¶ 14, 15, 42, Heilman Aff. ¶¶ 14, 15, 42, Finucan Aff. ¶¶ 14, 42, Smiley-McKeithen Aff. ¶¶ 13, 14, 42, M.Thomas Aff. ¶¶ 13, 14, 42.

[12]    Kuznyetsov Aff. ¶ 37, Boal Aff. ¶ 38, Heilman Aff. ¶ 38, Finucan Aff. ¶ 38, Smiley-McKeithen Aff. ¶ 38, M.Thomas Aff. ¶ 38.

[13]    Kuznyetsov Aff. ¶ 42, Boal Aff. ¶ 43, Heilman Aff. ¶ 43, Finucan Aff. ¶ 43, Smiley-McKeithen Aff. ¶ 43, M.Thomas Aff. ¶ 43.

[14]    Kuznyetsov Aff. ¶ 16, Boal Aff. ¶ 16, Heilman Aff. ¶ 16, Smiley-McKeithen Aff. ¶ 15, M.Thomas Aff. ¶ 15.

and even direct plaintiffs to work during their unpaid meal breaks, even though management know that plaintiffs would not be able to have a full meal break.[15] Defendants' management also know that to get the assigned tasks by the appointed deadline, employees have to work through their meal breaks although they will not get paid for it.[16]

Despite knowing that the work is being done, defendants' overriding concern is with cutting labor costs and staying within their budgets even though they are understaffed. Additionally, since defendants' facilities are repeatedly understaffed, employees put the patients' needs first and ahead of eating their meals.[17] Yet, the defendants continue to deduct time from their employees' paychecks. Defendants do not seem concerned that employees are working during meal periods and not getting paid for the time.[18]

Because the automatic deduction is taken by the defendants' computerized payroll system, all hourly employees, regardless of their unit or department, are subject to the automatic deduction of 30 minutes per shift.[19] Thus all hourly positions, from secretaries to cafeteria staff and from sitters to nurses are subject to the Meal Break Deduction Policy.[20]

Based on defendants' illegal policy, plaintiffs request notice be ordered by this Court to allow current and former employees the opportunity to participate in this litigation.

---

[15]    Kuznyetsov Aff. ¶¶ 20, 21, 22, Boal Aff. ¶¶ 20, 21, 22, Heilman Aff. ¶¶ 20, 21, 22, Finucan Aff. ¶¶ 19, 20, 21, Smiley-McKeithen Aff. ¶¶ 19, 20, 21, M.Thomas Aff. ¶¶ 19, 20, 21.

[16]    Kuznyetsov Aff. ¶ 29, Boal Aff. ¶ 29, Heilman Aff. ¶ 29, Finucan Aff. ¶ 29, Smiley-McKeithen Aff. ¶ 29, M.Thomas Aff. ¶ 29.

[17]    Kuznyetsov Aff. ¶ 11, Boal Aff. ¶ 11, Heilman Aff. ¶ 11, Finucan Aff. ¶ 11, Smiley-McKeithen Aff. ¶ 11, M.Thomas Aff. ¶ 11.

[18]    Kuznyetsov Aff. ¶ 31, Boal Aff. ¶ 31, Heilman Aff. ¶ 31, Finucan Aff. ¶ 31, Smiley-McKeithen Aff. ¶ 31, M.Thomas Aff. ¶ 31.

[19]    Kuznyetsov Aff. ¶¶ 3, 4, Boal Aff. ¶¶ 3, 4, 34, Heilman Aff. ¶¶ 3, 4, 34, Finucan Aff. ¶¶ 3, 4, 34, Smiley-McKeithen Aff. ¶¶ 3, 4, 34, M.Thomas Aff. ¶¶ 3, 4, 34.

[20]    Kuznyetsov Aff. ¶¶ 4, 11, Boal Aff. ¶¶ 4, 11, Heilman Aff. ¶¶ 4, 11, Finucan Aff. ¶¶ 4, 11, Smiley-McKeithen Aff. ¶¶ 4, 11, M.Thomas Aff. ¶¶ 4, 11.

ARGUMENT

## I.    LEGAL STANDARDS REGARDING MOTIONS FOR NOTICE.

Courts have established several clear legal principles to be followed when considering motions for notice in FLSA cases.

### A.    The Standard to Show Employees are Similarly Situated is Minimal, Typically Resulting in Notice Being Granted.

First, courts hold that the standard to send notice is "extremely lenient," "liberal," "low," "modest" or "minimal" due to the importance of sending notice as quickly as possible given the daily exhaustion of the statute of limitations.  *Bishop v. AT&T Corp.*, No. 08-468, 2009 WL 763946, at *3 (W.D. Pa. Mar. 23, 2009) (Ambrose, C.J.) (noting the standard is "'extremely lenient'"); *Bosley v. Chubb Corp.*, No. Civ.A. 04CV4598, 2005 WL 1334565, at *4 (E.D. Pa. June 3, 2005) ("liberal standard" which only requires "some factual showing"); *Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D. Pa. 2001) (Ambrose, C.J.) ("liberal standard"); *De Asencio v. Tyson Foods, Inc.*, 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) ("low burden"); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 91, 95 (S.D.N.Y. 2003) (plaintiffs burden is "minimal" and they need only make a "'modest factual showing'"); *Realite v. Ark Rests. Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998) (plaintiffs need only make a "modest factual showing"); *Hoffmann*, 982 F.Supp. at 261 (same); *Rehwaldt v. Elec. Data Sys. Corp.*, No. 95-876, 1996 WL 947568, at *3 (W.D.N.Y. Mar. 28, 1996) (plaintiffs need merely provide "'some factual basis'"); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (same).

Courts in this Circuit have held that, at most, plaintiffs must merely make "substantial allegations" or put forward a "factual basis" that the class members were subject to a single decision, policy, or plan.  Thus, plaintiffs do not need to do more than set forth "a

colorable basis" for their claim. *Sperling v. Hoffmann-La Roche*, 118 F.R.D. 392, 405-07 (D.N.J. 1988), *aff'd in part*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989); *De Asencio*, 130 F.Supp.2d at 663; *Bunnion v. Consol. Rail Corp.*, No. Civ.A. 97-4877, 1998 WL 372644, at *17 (E.D. Pa. May 14, 1998). The low standard is consistent with effectuating the well-established Third Circuit and Supreme Court precedence that the FLSA is to be read broadly and liberally to effectuate its remedial purpose. *Lusardi v. Xerox Corp.*, 99 F.R.D. 89, 93 (D.N.J. 1983); *Hoffmann-La Roche Inc.*, 862 F.2d at 447 ("The court emphasized both the 'broad remedial purpose' of the FLSA and the 'interest of the courts in avoiding multiplicity of suits.'"). Other courts have reached the same conclusion. *Jackson*, 163 F.R.D. at 431(burden met through "'substantial allegations'"); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995) ("plaintiffs need only describe the potential class within reasonable limits"); *Hoffmann*, 982 F.Supp. at 261 ("The burden on plaintiffs is not a stringent one" only requiring a "modest factual showing"); *Realite*, 7 F.Supp.2d at 307; *Rehwaldt*, 1996 WL 947568, at *4 ("plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subject to a common discriminatory scheme" and the allegations need neither be "strong or conclusive") (*citing Jackson*, 163 F.R.D. at 431-32).

As a result, motions for notice are typically granted. *See Pontius v. Delta Fin Corp.*, No. 04-1737, 2005 WL 6103189, at*3 (W.D. Pa. June 24, 2005)(Lancaster, J.)("typically results in 'conditional certification'"); *De Asencio*, 130 F.Supp.2d at 662; *Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06-CV-01158-RCJ-PAL, 2007 WL 1875539, at *3 (D.Nev. June 25, 2007) (notice "typically" granted); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) ("The usual result is conditional class certification."); *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 WL 824652, at *2 (N.D. Cal. Mar. 28, 2006); *Mooney v.*

*Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995); *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D.Kan. 2004).

> **B.    Notice Routinely Granted, as well as Summary Judgment, in Meal Break Deduction Cases.**

Courts routinely order notice to employees who are subject to an automatic meal break deduction policy like the one at issue in this case. *See Barrus v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224 (notification granted to all hourly employees subject to employer's automatic meal deduction policy); *Carmody v. Florida Ctr. for Recovery, Inc.*, No. 05-14295-CIV, 2006 WL 3666964 (S.D. Fla. Nov. 8, 2006) (notification granted to registered nurses and other similarly situated employees who claimed that thirty minutes was automatically deducted from their pay regardless of whether employees were actually relieved of their work duties); *Berger v. Cleveland Clinic Found.*, No. 1:05 CV 1508, 2007 WL 2902907 (N.D. Ohio Sept. 29, 2007) (court certified class action under both Rule 23 and FLSA § 216(b) for respiratory therapists subject to an automatic meal period deduction policy whose lunch breaks were interrupted for work related duties); *Mares v. Caesars Entm't, Inc.*, No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877 (S.D. Ind. Jan. 10, 2007)(notification granted to security officers and emergency medical technicians who were subject to employers' written policy that it was not necessary for employees to clock out for meal breaks rather their meal breaks would be deducted automatically for their daily time); *Frye v. Baptist Mem. Hospital, Inc.*, 2:07-CV-02708-SHM-TMP (W.D. Ten. Sept. 16, 2008) (Thomas Aff. Ex. D); *Brown*, 2008 WL 1924983, at *2; *Ohsann*, 2008 WL 2468559, at *2; *Jones-Turner v. Yellow Enter. Sys., LLC*, No. 3:07-CV-218-S, 2007 WL 3145980 (W.D. Ky. Oct. 25, 2007); *Boyd*, 2006 WL 1518987, at *4; *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008

WL 2885230 (E.D. Ky. July 22, 2008) (Stage II certification granted in meal break case);

*Sherrill v. Sutherland Global Servs., Inc.*, 487 F.Supp.2d 344, 350 (W.D.N.Y. 2007).

Further, many courts routinely hold defendants liable for violations of the FLSA based on meal break policies. *See Reich*, 121 F.3d at 65 (affirming district court's decision that meal periods were compensable); *Hartsell v. Dr. Pepper Bottling Co. of Tex.*, 207 F.3d 269, 274 (5th Cir. 2000); *Twaddle v. RKE Trucking Co.*, No. 2:04-CV-557, 2006 WL 840388 (S.D. Ohio Mar. 29, 2006) (summary judgment granted in favor of plaintiffs for meal break deductions); *Burgess v. Catawba County*, 805 F.Supp. 341, 347 (W.D.N.C. 1992) (granting plaintiffs' motion for summary judgment on meal break deductions).

### C.    All Employees Subject to the Policy Receive Notice.

Courts also order notice to be sent to all employees subject to the policy at issue – the employment situations, job titles, locations or claims of the notified employees do not need to be the same. *Mershon v. Elastic Stop Nut Div. of Harvard Indus., Inc.*, Civ. No. 87-1319 (HLS), 1990 WL 484152, at *6 (D.N.J. Mar. 23, 1990) (citing *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 52 (3d Cir. 1989); *Bishop*, 2009 WL 763946, at *5; *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) ("Class treatment under the [statute] is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments at different locations.")  A "finding of 'similarly situated' does not require the plaintiffs to perform the same job in the same location as long as there is a discriminatory policy common to all." *Abrams v. Gen. Elec. Co.*, No. 95-CV-1734 (FJS), 1996 WL 663889, at *2 (N.D.N.Y Nov. 4, 1996).

Even if all the named plaintiffs were employed by the same department, as long as the plaintiffs allege the same policy effected other employees elsewhere, notice to employees in

the corporation's other units and operations is warranted. *Schwed*, 159 F.R.D. at 377; *Hoffmann*, 982 F.Supp. at 264 (notice appropriate to all current and former managers and co-managers, or persons holding equivalent positions, however titled, who worked overtime and were not paid, rejecting defendant's attempts at a narrower range). The plaintiff must simply allege a factual nexus between the employees and the alleged policy. *Realite*, 7 F.Supp.2d at 307-08 (notice appropriate because affidavits "indicate" same policy was in effect at other locations); *Boyd v. Jupiter Aluminum Corp.*, No. 2:05-CV-227PPSAPR, 2006 WL 1518987, at *5-6 (N.D. Ind. May 31, 2006).

Therefore, in actions against healthcare systems alleging the violations alleged in this case, courts have consistently held that all hourly hospital employees should receive notice due to the hospital's automatic meal period deduction policy. *Frye v. Baptist Mem. Hospital, Inc.*, 2:07-CV-02708-SHM-TMP (W.D. Tenn. Sept. 16, 2008) (Thomas Aff. Ex. D); *Brown v. Maximum Efficiency Squared, LLC,* No. 2:07-CV-889-MEF, 2008 WL 1924983, at *2 (M.D. Ala. Apr. 30, 2008); *Ohsann v. L.V. Stabler Hosp.*, No. 2:07-cv-0875-WKW, 2008 WL 2468559, at *2 (M.D. Ala. June 17, 2008).

### D.    Efficiency is Gained Through Hearing All Claims in One Case.

A collective action also promotes the efficient litigation of plaintiffs' claims. Otherwise, the Court may be faced with hundreds of individual lawsuits complaining of the same violations. Because the policy applies broadly to all hourly employees, all such employees are appropriately joined in a single case.

To help manage the litigation as it moves forward, the Court has many tools at its disposal, such as creating subclasses. *See Adams*, 242 F.R.D. at 539 (noting that the court could create a sub-class for plaintiffs who were covered by a collective bargaining agreement);

*Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 WL 1335809, at *3 (D. Or. Aug. 24, 2001) (noting that after discovery the class could be divided into subgroups); *In re Visa Check/MasterMoney Antitrust Litig. v. Visa, USA, Inc.*, 280 F.3d 124, 141 (2d Cir. 2001) ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.").

Ultimately, issues related to case management as the case moves forward are appropriately addressed at Stage II. *See Gieseke v. First Horizon Home Loan Corp.*, 408 F.Supp.2d 1164, 1168 (D. Kan. 2006) (finding individual defenses, fairness and procedural questions and manageability issues appropriately addressed at Stage II); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *3-4 (D. Kan. Oct. 17, 2005) (finding individual inquiries inappropriate until Stage II) (*citing Pendlebury v. Starbucks Coffee Co.*, No. 04-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004); *Goldman v. RadioShack Corp.*, No. Civ.A. 2:03-CV-0032, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16, 2003)); *Westfall v. Kendle Int'l, CPU, LLC*, No. 1:05-cv-00118, 2007 WL 486606, at *9-10 (N.D.W.Va. Feb. 15, 2007) (finding individualized inquiries as to proposed class members more appropriate for second stage of certification and granting notice); *Dominguez v. Don Pedro Rest.*, No. 2:06 cv 241, 2007 WL 271567, at *3 (N.D. Ind. Jan. 25, 2007) (finding, "whether the class proposed by [plaintiff] should proceed as a collective action also is a question for a later stage…By

conditionally certifying a collective action, the court will permit discovery directed toward ascertaining the contours and propriety of the proposed class."). Further, defendant can move to dismiss anyone not similarly situated to named plaintiffs after discovery. *Boyd*, 2006 WL 1518987, at *5.

## II.    DEFENDANTS' POLICY AUTOMATICALLY DEDUCTS TIME FOR A MEAL BREAK WITHOUT ENSURING EMPLOYEES DO NOT PERFORM WORK.

Although the merits of plaintiffs' claims do not matter for purposes of this motion, as discussed in detail below (*see* Point II.C.2.a. *infra*), a discussion of defendants' illegal Meal Break Deduction Policy demonstrates how all hourly employees are similarly-situated with respect to the policies (regardless of the policies' legality) and thus entitled to notice of this action.

### A.    Defendants' Meal Break Deduction Policy Does Not Comply with the Law.

Defendants' Meal Break Deduction Policy runs afoul of the FLSA because the defendants do not "ensure" the employees stop working during their meal breaks. If the employer's policy permits its employees to work through their meal period – and certainly if it knows and encourages them to do so – it has no legitimate basis to program its computers to take the employees' pay from their paychecks each day.

As a starting point, under the FLSA, all time employees are "suffer[ed] or permit[ted]" to work must be compensated. 29 U.S.C. § 203(g). The regulations explain this broad standard:

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason

is immaterial.  The employer knows or has reason to believe that
he is continuing to work and the time is working time.

29 C.F.R. § 785.11.

In all such cases it is the duty of the management to exercise its
control and see that the work is not performed if it does not
want it to be performed.  It cannot sit back and accept the
benefits without compensating for them.  The mere
promulgation of a rule against such work is not enough.
Management has the power to enforce the rule and must make
every effort to do so.

29 C.F.R. § 785.13.

Recognizing the broad statutory language, the Supreme Court has interpreted the
FLSA very broadly, requiring that employees receive compensation for any time they are
suffered or permitted to work, noting that "[a] broader or more comprehensive coverage of
employees...would be difficult to frame."  *U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945);
*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) ("While the FLSA, like ERISA,
defines an 'employee' to include 'any individual employed by an employer,' it defines the
verb 'employ' expansively to mean 'suffer or permit to work.'"); *Zheng v. Liberty Apparel Co.
Inc.*, 355 F.3d 61, 66, 69 (2d Cir. 2003) (citing *Rosenwasser*, 323 U.S. at 363 n. 3
("FLSA...defines 'employ' as including 'to suffer or permit to work.'"  "This is 'the broadest
definition [of 'employ'] that has ever been included in any one act.'")).

More recently the Supreme Court again ruled on the scope of compensable time
under the FLSA.  The Court considered whether time spent walking to and from the
changing area to the production area is compensable.  *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 37
(2005).  The Court unanimously ruled that such walking time is compensable under the
FLSA.  *See id*.

Further, if defendants knew or had reason to know that employees were working, such time is compensable as overtime for employees.  *See Reich v. S. New England Telecomms.*, 121 F.3d 58 (2d Cir. 1997); *see also* 29 C.F.R. § 825.105 (applying the "suffer or permit" definition of "employ" under the FLSA to the FMLA stating that "[m]ere knowledge by an employer of work done for the employer by another is sufficient to create" liability); *see also* 29 C.F.R. § 785.11 (if an employer knows or has reason to believe that an employee is continuing to work the time is working time).

Thus, the scope of time for which employees must be paid under the FLSA is very broad – any time an employee is permitted to work must be compensated.  This rule applies equally when an employee performs work during a meal period, and as a result, any work performed by employees during meal breaks must be compensated.  Thus, particular care must be taken when employers decide to deduct time automatically from employees' paychecks for meal breaks.

More specifically, the United States Department of Labor ("DOL") has issued particular guidance directed to health care employers on the issue of meal break deductions. *See Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked* (2008) (Thomas Aff. Ex. E).  The Department of Labor instructs healthcare employers who chose to automatically deduct 30-minutes per shift that they must ensure that the employees are receiving the full meal break.  *See id*.; 29 C.F.R. § 785.19.  The failure to "ensure" that employees receive a full meal break when automatically deducting time for a meal break means the employer is violating the FLSA.

Certainly, in some employment settings, it might be possible for an employer to "ensure" a full, uninterrupted meal period, such as a manufacturing facility where the

employer can shut down an assembly line for 30 minutes while the employees take their break or a small office where the telephones are turned off for 30 minutes during the lunch period so that employees can take their breaks.

But that's simply not the nature of defendants' business. Health care is a 24-hour, 7-day a week operation, and defendants do not shut down their health care facilities for 30 minutes every day for employees to take meal breaks. Defendants in fact expect and know that their employees are performing work during their meal breaks – for example by observing employees working during meal periods, by expressly asking employees to perform work during meal breaks, by assigning tasks that cannot be accomplished except by working during meal breaks, by understaffing their facilities and by requiring employees to answer pages during meal breaks. And, as discussed above and below, employees themselves confirm that they performed work during their meal breaks, which means that defendants failed to ensure that employees took their breaks. As a result, defendants' Meal Break Deduction Policy violates the law because defendants' policy is not to ensure their employees stop working during time the defendants are automatically deducting from their pay.

## B.    Employees Confirm the Existence and Application of the Policies

The named plaintiffs have produced more than sufficient evidence to warrant notification under the liberal FLSA standards by showing that similarly situated employees were subject to a common policy, practice and/or system that deducted time from employees for meal breaks even when employees worked through their meal breaks and defendants' failed to ensure that employees took their breaks.[21] Employees also universally testified that defendants' policy was not to compensate employees when their meal breaks were

---

[21]    Kuznyetsov Aff. ¶¶ 4, 6, Boal Aff. ¶¶ 4, 6, Heilman Aff. ¶¶ 4, 6, Finucan Aff. ¶¶ 4, 6, Smiley-McKeithen Aff. ¶¶ 4, 6, M.Thomas Aff. ¶¶ 4, 6.

interrupted.[22]   Additionally, employees have stated that the policies equally applied to all hourly employees.[23]   Plaintiffs have also provided sufficient evidence that the Meal Break Deduction Policy was observed throughout defendants' organization.[24]

Therefore, there is little dispute that there is a common issue among all the putative plaintiffs in this lawsuit: that similarly situated employees were subject to a common policy which *automatically* deducted time for meal breaks even though defendants failed failure to ensure that the employees received a break.

**C.     Defendants' Arguments Concerning the Merits and Damages Make No Difference**

In an attempt to prevent employees from receiving a *Hoffmann-LaRoche* notice, defendants often raise a host of arguments on issues such as scope of the class, merits, or damages, but courts reject these arguments.

1.     Job Titles and Positions are Irrelevant

Courts reject arguments by defendants that because of the large number of job titles within defendants' locations, notice should not be issued to all employees.  In cases in which the claim only relates to problems in a certain job title or location, courts hold notice should go to those employees with that job title or location.  However, when plaintiffs allege all hourly employees were subject to a common policy, courts require that all hourly employees receive notice without limiting notice to arbitrary job titles or location.  *See Frank v. Gold'n Plump Poultry, Inc.*, No. Civ. 041018JNERLE, 2005 WL 2240336, at *3 (D. Minn. Sept. 14,

---

[22]     Kuznyetsov Aff. ¶ 34, Boal Aff. ¶ 35, Heilman Aff. ¶ 35, Finucan Aff. ¶ 35, Smiley-McKeithen Aff. ¶ 35, M.Thomas Aff. ¶ 35.

[23]     Kuznyetsov Aff. ¶ 4, Boal Aff. ¶ 4, Heilman Aff. ¶ 4, Finucan Aff. ¶ 4, Smiley-McKeithen Aff. ¶ 4, M.Thomas Aff. ¶ 4.

[24]     Kuznyetsov Aff. ¶¶ 21, 22, Boal Aff. ¶¶ 21, 22, Heilman Aff. ¶¶ 21, 22, Finucan Aff. ¶¶ 20, 21, Smiley-McKeithen Aff. ¶¶ 20, 21, M.Thomas Aff. ¶¶ 20, 21.

2005) (rejecting defendant's argument that notice should not be issued because plaintiffs worked at different geographic locations in different areas, reported to different supervisors who had autonomous decision-making authority, held different positions and worked different hours); *Pivonka v. Bd. of County Comm'rs*, No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (FLSA notice granted to paramedics, lieutenants and captains classified as non-exempt employees); *Donohue v. Francis Servs., Inc.*, No. Civ.A. 04-170, 2004 WL 1161366, at *3 (E.D.La. May 24, 2004) (rejecting defendant's argument that class definition was "problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement"); *Robinson v. Eastman Kodak Co.*, No. 02-CV-6204T(F), 2003 WL 24183368, at *4 (W.D.N.Y. Apr. 9, 2003) (granting FLSA certification to class of hourly employees); *Realite*, 7 F.Supp.2d at 307 (notice sent to all hourly employees at 15 different locations); *Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787(HB), 2002 WL 1343753, at *2 (S.D.N.Y. June 19, 2002) (adopting plaintiffs' "more expansive scope of notice"); *Belcher v. Shoney's, Inc.*, 927 F.Supp. 249 (M.D. Tenn. 1996) (granting nationwide notice for off-the-clock violations); *Heagney*, 122 F.R.D. at 127 ("Class treatment under the [statute] is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments at different locations."); *Abrams*, 1996 WL 663889, at *2 ("a finding of 'similarly situated' does not require the plaintiffs to perform the same job in the same location as long as there is a discriminatory policy common to all."); *Jackson*, 163 F.R.D. at 432; *Hoffmann*, 982 F.Supp. at 264 (notice appropriate to all current and former managers and co-managers, or persons holding equivalent positions, however titled, who worked overtime and were not paid, rejecting defendant's attempts at a narrower range).  The plaintiffs must simply allege a

factual nexus between the employees and the alleged policy. *Realite*, 7 F.Supp.2d at 307 (notice appropriate because affidavits "indicate" same policy was in effect at other locations).

Further, courts have repeatedly held that class certification is appropriate for off-the-clock claims, even among plaintiffs with differing job titles or working in differing locations. *See Ansoumana*, 201 F.R.D. at 87; *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004); *Smellie v. Mount Sinai Hosp.*, No. 03Civ.0805(LTS)(DFE), 2004 WL 2725124, at *4 (S.D.N.Y. Nov. 29, 2004); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at *4 (N.D. Ill. Dec. 1, 2000); *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D.Pa. 2000). Plaintiffs need not come forward with evidence from every facility. *Adams*, 242 F.R.D. at 537 ("For conditional certification, plaintiffs do not need to provide evidence that every facility relevant to the proposed class maintains an illegal policy."); *Allen v. McWane,* No. Civ.A.2:06-CV-158(TJ), 2006 WL 3246531, at *3 (E.D. Tex. Nov. 7, 2006) ("Although the affidavits and declarations do not encompass all of the Defendant's facilities, the Court finds that the Plaintiffs have come forward with competent evidence.").

Here, because the Meal Break Deduction Policy applies to *all* hourly employees *regardless* of position, those employees should receive notice – job titles are not the issue in this case. If an employee was not subject to the policy, she should not get notice regardless of title. But the same is true in reverse: an employee who is subject to the challenged policy should receive notice regardless of job title or duties.

2.    Issues Irrelevant to the Policy Do Not Defeat Notice

Defendants in FLSA cases also often present arguments on issues that have no bearing on the policies at issue in the case, such as merits-based arguments on whether the breaks are

compensable, methods of recording missed meal breaks, issues related to damages, differences among managers in recording missed meal breaks and whether managers knew of the missed meal breaks.  Given the irrelevant nature of such arguments, they do not defeat notice.

    a.    *Whether Breaks are Compensable is an Irrelevant Question on the Merits*

Defendants in these cases have unsuccessfully tried to prevent employees from learning about this case by arguing that parts of the merits need to be considered, for example, that individual inquiries will be needed on employees' lunch breaks to determine whether those breaks were compensable.  However, courts have uniformly held that inquiries as to the ultimate merits of the claim are irrelevant at this stage.[25]

Class-wide notice is wise, even if the claims have no merit, or even if the plaintiffs will be placed into subclasses:

> [W]e cannot ignore the simple truth that the effectiveness of class enforcement . . . would be vastly diminished if named plaintiffs were not allowed to notify those who may be similarly situated of their right to be included in the class through written consent.  The meaningfulness of the . . . class remedy should not depend on the vagaries of rumor and gossip, through which certain fortunate grievants might happen to hear of a pending suit.

*Lusardi*, 99 F.R.D. at 93; *Rehwaldt*, 1996 WL 947568, at *3; *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488(MBM), 2005 WL 2000133, at *13 (S.D.N.Y. 2005); *Realite*, 7 F.Supp.2d at 306; *Stanfield v. First NLC Fin. Servs., LLC*, No. C 06-3892 SBA, 2006 WL 3190527, at *4 (N.D.Cal. Nov. 1, 2006) (finding collective action should still be conditionally certified even if plaintiffs cannot ultimately prevail on FLSA claim); *Perez v. RadioShack Corp.*, No. 02 C

---

[25]    That is particularly true in this case in which the common issue on which the case will rise or fall is whether the defendants' *policy* was to ensure work was not being performed when the defendants chose to automatically deduct meal breaks.  The plaintiffs are not challenging a particularized failure to pay for a meal break at a particular time or to a limited number of employees.

7884, 2003 WL 21372467, at *1 (N.D.Ill. June 13, 2003) ("At this stage, the court declines to interfere with the standard [two stage] procedure. The court will permit notice to proceed, cautioning that a resolution of this case on the merits may well not be favorable to the class members' interests."); *Chase v. AIMCO Props., L.P.*, 374 F.Supp.2d 196, 201 (D.D.C. 2005) (court expresses doubt about viability of claims but issues notice); *Hammond v. Lowe's Home Ctrs., Inc.*, No. Civ.A. 02-2509-CM, 2005 WL 2122642, at *5 (D. Kan. Sep. 1, 2005) ("The court does not conditionally certify the class without hesitation.  The court is particularly concerned with whether, as a matter of law, plaintiffs' claim…is actionable….But these issues are not currently before the court."); *Vaicaitiene v. Partners in Care, Inc.*, No. 04 Civ. 9125(RMB)(THK), 2005 WL 1593053, at *3 (S.D.N.Y. July 6, 2005) (finding it unnecessary for court to determine ultimate merits of claim before granting notice).

Discovery can also be conducted more efficiently if the notice is sent early, regardless of the potential merits of the claim or ultimate merits of the claim.

> Defendants' argument [against pre-discovery notice] is that "the plaintiffs' claims may be shown in the crucible of discovery to be weak, if not meritless," in which event no notice should be sent….  The answer is that the experiences of other employees may well be probative of the existence *vel non* of a discriminatory policy, thereby affecting the merits of plaintiffs' own claims; and the notice machinery contemplated by the [statute], by reaching out to potential plaintiffs, may further the statute's remedial purpose.

*Rehwaldt*, 1996 WL 947568, at *4 (*citing Frank v. Capital Cities Commc'ns, Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981); *Realite*, 7 F.Supp.2d at 308 ("I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated ….  I may later decertify the class, or divide the class into subgroups ….  However, at this early juncture … principles of efficiency and judicial economy militate in favor of maintaining this action as a collective one, and waiting to see what the facts bear out.").

Therefore, the court does not examine the underlying merits of the action when determining whether notice should be sent. *Rehwaldt*, 1996 WL 947568, at *4 (*citing Frank*, 88 F.R.D. at 676); *Realite*, 7 F.Supp.2d at 309; *Jackson*, 163 F.R.D. at 432; *Barrus v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224, 232 (W.D.N.Y. 2006); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 391 (W.D.N.Y. 2005) ("Those matters, however, go to the merits of plaintiff's claims, which are not relevant at this stage."); *Cuzco v. Orion Builders, Inc.*, 477 F.Supp.2d 628, 633 (S.D.N.Y. 2007) (stating merits of plaintiff's claim do not need to be evaluated to determine that group of similarly situated persons exists); *Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007); *Stanfield v. First NLC Fin. Servs., LLC*, No. C 06-3892 SBA, 2006 WL 3190527, at *4 (N.D.Cal. Nov. 1, 2006) ("the Court will not evaluate the merits of Plaintiffs' claims under the FLSA at this point in the litigation"); *Scott v. Heartland Home Fin., Inc.*, No. 1:05-CV-2812-TWT, 2006 WL 1209813, at *3 (N.D.Ga. May 3, 2006) (in deciding a motion to authorize a collective action, the court need not "resolve factual issues"); *Kalish v. High Tech Inst., Inc.*, No. Civ. 04-1440(JRT/JSM), 2005 WL 1073645, at *2 (D.Minn. Apr. 22, 2005) (so long as a "colorable basis" for the claim exists, the court need not make any credibility determinations at the initial FLSA certification stage); *Persin v. CareerBuilder, LLC*, No. 05 C 2347, 2005 WL 3159684, at *4 (N.D.Ill. Nov. 23, 2005) (finding defendant's arguments going to the merits of plaintiffs' claims do not counter plaintiff's allegations that he and the putative class members are similarly situated for notice purposes, stating "[r]esolution of the instant motion does not require us to pass on Persin's ability to prevail. We need only decide whether others could be in the same boat, not that they definitively are."); *LeGrand v. Educ. Mgmt. Corp.*, No. 03 Civ. 9798(HB)(HBP), 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004); *Ayers v. SGS Control Servs., Inc.*, No.

03Civ.9078(RMB)(RLE), 2004 WL 2978296, at *6 (S.D.N.Y. Dec. 21, 2004); *Gjurovich*, 282 F.Supp.2d at 96; *Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234, 238 (N.D.N.Y. 2002) ("A court should not evaluate the merits of plaintiffs' claim in determining whether class notice is warranted."); *Krueger v. N.Y. Tel. Co.*, Nos. 93 CIV 0178 (LMM), 93 CIV. 0179 (LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) (stating court need not evaluate merits of plaintiffs' claim in making similarly situated determination).

Nor does the fact that the notified employees may or may not ultimately be found to be similarly situated, make any difference at the notification stage. *Rehwaldt*, 1996 WL 947568, at *3 (*citing Frank*, 88 F.R.D. at 676); *Realite*, 7 F.Supp.2d at 308; *Jackson*, 163 F.R.D. at 431.

In this case, the common issue is whether defendants' policy "ensured" that the employees did not work during meal breaks when the defendants were automatically deducting from the employees' pay.  As noted above, the DOL has stated that employers must ensure employees are receiving the full meal break if they choose to take an automatic deduction.  *See Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked* (2008) (attached to the Thomas Aff. as Exhibit E).  Defendants have plainly violated the statute and regulation because they fail to ensure that employees receive the full meal break even though they automatically deduct 30 minutes.

Regardless of which party is correct on the merits, both parties will be free to argue the proper legal standard at the appropriate time in this case (e.g., on a motion for summary judgment after the completion of discovery) – now (before notice and prior to discovery) is not that time.  Now is the time to ensure employees are notified about this case so they can decide whether to opt-in.

b. *Defendants' Policy Not to Ensure Employees Take a Break Which is Automatically Deducted is Illegal*

Defendants sometimes argue that their Meal Break Deduction Policy does not violate the law because they made available to employees a way to record time spent working through their meal breaks. Defendants' argument, though, is irrelevant because under the FLSA employers cannot put the burden on employees to make sure all of their work time is paid. As discussed above, the employer's obligation is to pay for all time it *permits* an employee to work – not the time the employee *records*. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13. The DOL has explicitly determined that an employer must pay for time an employee works at a health care facility during a meal break even when the employee fails to record such time as required by the employer's policy.

> Q1: 'If an employee fails to take a meal break and does not notify the manager that he did so in direct violation of the policy, is additional … compensation due…?' A1: 'Work not requested but suffered or permitted is work time.' 29 C.F.R. § 785.11. Thus, the employer must compensate the employee for all hours worked including the time worked during the missed meal period.

*U.S. Dep't of Labor Op. Ltr.*, FLSA 2008-7NA, May 15, 2008.

Such a rule only makes sense. It is consistent with the statutory and regulatory language requiring payment of any time the employee was "permitted" to work (instead of being limited to the amount of "recorded" time). Further, employees are not experts on the intricacies of the statutory and regulatory requirements of how meal breaks are compensated. They should not be entrusted with making sure their employer follows the law. Instead, the

employer, and its legal and human resources staff, are the ones who need to make sure their employees are paid legally for all work they perform.

This is particularly true here where employee after employee testified that they performed work during meal breaks without compensation and defendants knew about such work. Employees regularly worked through their meal breaks in plain sight of their managers – and, at times, at the managers' request.[26] Complaints of having to work during meal periods went unanswered, other than to suggest that employees manage their time better – a nearly impossible solution given the staffing levels.[27] Management also knew that employees had to work through their meal breaks in order to get all of the assigned tasks done, particularly given the short-staffing.[28] Employees were also expected to be available during their entire shifts, including their meal breaks, and are not relieved in order to take a meal break.[29] They also had to respond to pages and requests from patients, co-workers and management even if they were on a break.[30] As such, defendants have failed to *ensure* that employees are relieved from duty – a requirement recognized by the DOL for employers who chose to implement an automatic deduction policy.

Thus, even if employees could theoretically record some time spent working during meal periods, that defendants knew employees were working during their meal breaks (and

---

[26]    Kuznyetsov Aff. ¶¶ 22, 23, Boal Aff. ¶¶ 22, 23, Heilman Aff. ¶¶ 22, 23, Finucan Aff. ¶¶ 21, 22, Smiley-McKeithen Aff. ¶¶ 21, 22, M.Thomas Aff. ¶¶ 21, 22.

[27]    Kuznyetsov Aff. ¶¶ 25, 29, Boal Aff. ¶¶ 25, 29, Heilman Aff. ¶¶ 25, 29, Finucan Aff. ¶¶ 24, 29, Smiley-McKeithen Aff. ¶¶ 23, 29, M.Thomas Aff. ¶¶ 23, 29.

[28]    Kuznyetsov Aff. ¶ 29, Boal Aff. ¶ 29, Heilman Aff. ¶ 29, Finucan Aff. ¶ 29, Smiley-McKeithen Aff. ¶ 29, M.Thomas Aff. ¶ 29.

[29]    Kuznyetsov Aff. ¶ 9, Boal Aff. ¶ 9, Heilman Aff. ¶ 9, Finucan Aff. ¶ 9, Smiley-McKeithen Aff. ¶ 9, M.Thomas Aff. ¶ 9.

[30]    Kuznyetsov Aff. ¶ 10, Boal Aff. ¶ 10, Heilman Aff. ¶ 10, Finucan Aff. ¶ 10, Smiley-McKeithen Aff. ¶ 10, M.Thomas Aff. ¶ 10.

therefore not ensuring employees took their breaks) and continued to make deductions results in a violation of the FLSA.

Because the liability in this case will never turn on whether an employee partially *recorded* his or her missed meal period,[31] discussions by an employer of internal employee recording practices are simply irrelevant on whether employees are similarly situated under the Meal Break Deduction Policy. The issue is instead whether or not the defendants' common policy "ensured" the employees did no work during their meal break when the defendants chose to turn on their automatic meal break deduction.

> c.     *Alleged Differences Among Managers Do Not Defeat Conditional Certification*

Defendants in similar cases have also claimed that their individual managers are responsible for ensuring that employees are paid for missed breaks, suggesting there are localized policies and that policies were not implemented and enforced centrally. Again, this argument does not defeat notice.

First, to make this argument, defendants must turn a blind eye to the source of the policy. The policy emanates from defendants' time-keeping system which is programmed to automatically deduct one-half hour from each employee each day even when employees perform work during their meal breaks and failing to ensure that employees were paid when they performed work during their meal breaks. The actions of individual managers therefore make no difference, except potentially for damages – an irrelevant issue in this motion, as discussed above.

---

[31]     If employees received some compensation for some missed meal periods, such information may be relevant to the damages the employee receives in this case. But, as discussed above, damage issues are irrelevant on a motion for notice.

Second, even when defendants claim their operations are "decentralized," courts still put into effect the FLSA's remedial machinery.  For example, in *Gambo v. Lucent Techs., Inc.*, the court rejected the defendant's claims that decentralized management made it "impossible" to maintain a common plan or policy:

> Defendant cites no authority which requires a plaintiff to show that a common policy stems from a centralized authority; if multiple decentralized units adopted an unlawful policy with identical content-for example, "we simply refuse to pay time-and-a-half, irrespective what the law requires"-concerning similarly-situated workers, that would appear to be a "common policy or plan," particularly for purposes of assessing the propriety of notice at step one.  Nothing in the caselaw cited by the parties, at least, suggests that the common policy must stem from a top-down decision of central management.  If individual business units adopt similarly unlawful policies and operate in materially similar ways as to materially similar workers, then a "common policy or plan" would appear to exist.  And, again, the Court need not sort out all of these issues at this time; if discovery demonstrates that the putative class is inappropriate, unjustified, or unworkable, Defendant has reserved its right to oppose actual certification in some or all forms or to seek severance, as appropriate.

No. 05 C 3701, 2005 WL 3542485, at *5 (N.D. Ill. Dec. 22, 2005).  *See also Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991) (issuing notice under the ADEA, which incorporates the FLSA's notice provisions, despite defendant's claims that staffing decisions were "highly decentralized"); *Bradford*, 184 F.Supp.2d at 1347 (denying defendant's motion to decertify at stage two despite defendant's contention that there was no "overriding corporate directive" concerning store management which therefore allowed different management structures and according to defendant different job duties for the plaintiffs and finding that "[t]he evidence does not demonstrate that this model resulted in many practical differences among the stores"); *Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F.Supp.2d 601, 606 (S.D. Tex. 2005) (conditionally certifying class even though employees were to report issues with reporting time to their individual managers).

- 26 -

Ultimately, even the existence of individual differences does not defeat conditional certification.  *See Mendez*, 232 F.R.D. at 93-94 (even where individual differences may exist with respect to class members, such differences do not defeat the appropriateness of certification of an FLSA class).

Besides the weaknesses in defendants' likely legal argument, even though defendants may allege that some employees are owed no pay for some lunches, which is an irrelevant question on damages, that does not eliminate the pay owed for the many automatically deducted meal periods when the defendants violated the law by not ensuring the employees stopped working.

> d.      *Damages Issues Also Irrelevant*

Further, whether some employees received pay for some meal breaks also relates to the damages those employees will be entitled to receive in this case.  Like arguments concerning the merits, issues related to damages do not factor into the decision whether to issue notice to employees.  *See Mendez v. Radec Corp.*, 232 F.R.D. 78, 92-93 (W.D.N.Y. 2005); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y.2001) ("'It is well-established that individual questions with respect to damages will not defeat class certification ... unless that issue creates a conflict which goes to the heart of the lawsuit.'"); *Brown v. Money Tree Mortgage, Inc.*, 222 F.RD. 676, 682 (D. Kan. 2004) (same); *Bradford v. Bed, Bath & Beyond, Inc.*, 184 F.Supp.2d 1342, 1351 (N.D. Ga. 2002) (finding individual issues pertaining to calculation of damages will not preclude certification since individual damages hearings may be held).

Further, that some employees may have received pay for some meal breaks only limits the recovery for those employees – they cannot seek double recovery for the same meal

periods.  As such, the argument ultimately goes to damages and liability (which are not properly considered on a motion for notice, as discussed above), not whether notice should be issued.

e.    *Knowledge of Managers Relates to Merits of Plaintiffs' Claims*

Managers' knowledge of the work being performed, defendants sometimes argue, needs to be demonstrated by the plaintiffs.  Yet again, though such an argument is merits-based and an attempt to skip plaintiffs' motion for notice and proceed directly to summary judgment.

Legally, if defendants had mere constructive knowledge that employees were working, such time is compensable as overtime for employees.  *See Reich*, 121 F.3d 58; *see also* 29 C.F.R. § 825.105 (applying the "suffer or permit" definition of "employ" under the FLSA to the FMLA stating that "[m]ere knowledge by an employer of work done for the employer by another is sufficient to create" liability); 29 C.F.R. § 785.11 (If an employer knows or has reason to believe that an employee is continuing to work the time is working time).

Proof of constructive knowledge does not require analysis of managers' personal knowledge.  Plaintiffs are confident that the evidence will show that defendants were uniformly and fully aware (and certainly constructively aware) of the work being performed on its premises during lunch.  They are, after all, a hospital that requires its employees to work even during their breaks.  Certainly defendants will be free to press an argument to the contrary when they move on the merits at the end of discovery.  However, it is far too early to resolve this factual, merits-based argument.  Once notice has issued and discovery is complete, the Court can determine whose argument carries the day.  In the interim, the

employees whose rights are affected by this lawsuit are entitled to know of this action so they can make an informed decision regarding their rights.

Moreover, the issue is whether defendants ensured employees were relieved from duty for meal breaks which defendants automatically deducted from employees' pay. Whether managers knew work was being performed during employees' breaks is irrelevant to that question.

Overall, any merits-based questions raised by defendants are rejected as irrelevant on a motion for notice. Defendants simply will be able to offer no legitimate reason to deny employees the opportunity to learn about this case and opt-in to protect their rights.

## III.    PLAINTIFFS' PROPOSED COURT-AUTHORIZED NOTICE.

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at 170. The court-authorized notice prevents "misleading communications," such as is often unilaterally disseminated by defendants. *Id.* at 172. Plaintiffs' proposed notice meets these criteria. It provides notice of the pending action and opportunity to opt-in. (Thomas Aff., Ex. A)

Plaintiffs' counsel modeled their proposed notice heavily on the examples provided on the Federal Judicial Center's ("FJC") website, found at (http://www.fjc.gov/public/home.nsf). The FJC is the education and research agency for the federal courts which was established by Congress in 1967, on the recommendation of the Judicial Conference of the United States. (Thomas Aff., Ex. B) The FJC was requested to develop illustrative notices of proposed class action certifications and settlements by the Subcommittee on Class Actions of the U.S. Judicial Branch's Advisory Committee on the Federal Rules. In order to develop its

illustrative notices, the FJC engaged in a careful study of the use of plain language in legal documents.  (Thomas Aff., Ex. B)  After obtaining recommendations from a lawyer with a Ph.D. in linguistics and using multiple rounds of focus groups, testing and re-drafting to refine the notice to provide maximum comprehension for individuals reading the notice, the FJC finally posted, and re-posted, its illustrative notices for use by courts and attorneys. (Thomas Aff., Ex. C; FJC Employment Discrimination Class Action-Full Notice)   As a result of this comprehensive research and analysis, the FJC's illustrative notices are the recognized leading models for notice in class actions.  *See Bafus v. Aspen Realty, Inc.*, No. CV-04-121-S-BLW, 2007 WL 793633, at *5 (D. Idaho Mar. 14, 2007); *Pierce v. Novastar Mortgage, Inc.,* No. C05-5835RJB, 2007 WL 505670, at *3 (W.D. Wash. Feb. 12, 2007); *Grider v. Keystone Health Plan Cent., Inc.*, No. 2001-CV-05641, 2006 WL 3825178 (E.D. Pa. Dec. 20, 2006); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F.Supp.2d 612 (E.D. La. 2006); *Rivera-Feliciano, et al. v. Acevedo-Vila*, No. Civ. 05-1910(PG), 2005 WL 2170881 (D.P.R. Sept. 7, 2005); *Martsolf v. JBC Legal Group, P.C.*, No. Civ.A. 1:04-CV-1346, 2005 WL 331544 (M.D. Pa. Feb. 7, 2005); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221 (S.D.W.Va. 2005); *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207 (D.N.J. 2005); *In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F.Supp.2d 180 (S.D.N.Y. 2003); *Allstate Fin. Corp. v. Bristol Meyers Squibb Co.*, No. 96 Civ. 1785(LMM), 1997 WL 728237 (S.D.N.Y. Nov. 20, 1997).

Plaintiffs' notice follows the content and form of the FJC models, including an introductory page that quickly informs class members about the case and how they are affected and detailed information separated by headings. (Thomas Aff., Ex. A)   Overall, plaintiffs' proposed notice is easy to read and written in plain English, informing class

members of their rights and how they can elect to participate in the action. The notice also describes the legal effect of joining the suit; describes the legal effect of not joining the suit; notes that the Court expresses no opinion regarding the merits of plaintiffs' claims or defendants' liability; and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. *See* 29 U.S.C. § 215(a)(3) (anti-retaliation provision).

Plaintiffs propose that the notice and consent forms be mailed first-class to all of defendants' employees who are or have been subject to the Meal Break Deduction Policy. To facilitate this notice, the Court should also order defendant to disclose the names and addresses of all potential plaintiffs.

Because the statute of limitations is daily destroying the injured employees' ability to collect damages, plaintiffs also request that defendants internally post the notice prominently on the lunch room bulletin boards and any time clocks used by hourly employees (or alternatively on the bulletin boards where job notices are posted), print the notice in five circulations of the company's newsletter and e-mail notices to employees. Courts have long required that notice be posted at company facilities, in addition to being mailed to employees' homes as well as ordering notice to be emailed to employees. *See, e.g., Cranney v. Carriage Servs., Inc.*, No. 2:07cv-1587-RLH-PAL, 2008 WL 608639, at *5 (ordering notice to be posted in defendants' locations, emailed to employees, publicized in employee newsletter as well as mailed to employees); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (first class mail and posting at workplaces constituted "'best notice practicable'" to the class); *Johnson v. Am. Airlines, Inc.*, 531 F.Supp. 957, 964 (N.D. Tex. 1982) (notice ordered to be posted on employee bulletin boards at defendant's flight bases);

*Frank,* 88 F.R.D. at 679 (posting on bulletin boards); *Kane v. Gage Merch. Servs., Inc.,* 138 F.Supp.2d 212, 216 (D. Mass. 2001)(requiring the provision of employee's e-mail address).

Plaintiffs' counsel can take steps in addition to the court-approved notice to inform plaintiffs of their rights.  For instance, counsel may send additional written notices to affected employees, provided the written communication is accurate and not misleading.  *See Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466 (1988); *Gulf Oil Co. v. Bernard* 452 U.S. 89 (1981).  To ascertain the facts and gather evidence, plaintiffs' counsel may initiate phone contact with potential witnesses, provided those individuals are not represented by counsel.  These measures are important, and plaintiffs' counsel will utilize them as needed.  However, as courts have repeatedly held, the best way to insure that employees' rights do not continue to "die daily" is for this Court to approve the notice proposed by plaintiffs; order its expedited dissemination; and forbid any future retaliation.

As set forth above, this case requires immediate and effective FLSA notification.  Defendants have every reason to delay this process in any way possible – every day that goes by removes large amounts of liability from their books.  Therefore, every effort must be made to stop the valid claims of defendants' employees from continuing to "die daily."

Therefore, it is appropriate to send notice to all potentially affected employees.

## IV.    APPOINTMENT OF CLASS COUNSEL.

Plaintiffs respectfully request that the law firm of Dolin, Thomas & Solomon LLP ("DTS") be appointed class counsel in this matter.  Courts appoint class counsel in FLSA cases, an approach consistent with Federal Rule of Civil Procedure 23.  *See Adams v. Inter-Con*

*Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007).[32]  DTS is

the appropriate class counsel for this litigation.

First, DTS has both identified the claims in this case and thoroughly investigated

those claims.  Perhaps the best evidence of DTS's efforts is the number of employees who

have decided to opt into this case – already, more than 230 employees of defendants have

found out about this case and decided to join the action.  Further, through its investigation,

DTS discovered the illegal policies at issue and the millions of dollars of wages being denied

to defendants' employees.

Second, DTS focuses its practice on employment law, and in particular, wage and

hour class actions.  Presently, the firm is handling a number of wage and hour class actions

throughout the country, in addition to other complex employment litigation and has resolved

a number of such cases in the past.  *See, e.g.*, *Cranney v. Carriage Servs., Inc.*, No. 2:07cv-1587-

RLH-PAL, 2008 WL 608639 (D. Nev. Feb. 29, 2008); *Parks v. Dick's Sporting Goods, Inc.*, No.

05-CV-6590 CJS, 2007 WL 913927 (W.D.N.Y. Mar. 23, 2007); *Barrus*, 465 F.Supp.2d 224;

*Mendez*, 232 F.R.D. 78; *see generally Prise v. Alderwoods Group, Inc.*, No. 06-1641 (W.D. Pa.);

*Stickle v. SCI Western Market Support Ctr., L.P.*, No. 08-cv-83 (D.Az.); *Rubery v. Buth-Na-*

*Bodhaige, Inc.*, No. 04-CV-6337 (W.D.N.Y.); *Poletta v. JP Morgan Chase & Co.*, No. 06-CV-

6237 (W.D.N.Y.); *Tracy v. NVR, Inc.*, No. 04-CV-6541 (W.D.N.Y.).

Third, DTS is well-versed in wage and hour law.  "[DTS] is experienced in class action

lawsuits, having participated in similar actions in the past.  Further, counsel has extensive

experience in employment litigation, and particular expertise with the FLSA."    *Frank v.*

*Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 20**05**).  In addition to prosecuting a

---

[32]    Rule 23 provides that "a court that certifies a class must appoint class counsel." FED. R. CIV.
P. 23(g).

large number of wage and hour cases both presently and in the past, DTS's lawyers are also recognized leaders on the subject, serving on committees and lecturing on the subject to various groups.  For example, Nelson Thomas, one of the firm's partners, and counsel on this case, currently sits on the American Bar Association's editorial board for the Fair Labor Standards Act treatise.  Further, Mr. Thomas is a recognized speaker nationally on class actions, for example, recently chairing an annual national conference of prominent defense and plaintiffs' attorneys sponsored by the American Conference Institute on wage and hour class actions.  He was also recently asked to speak on wage and hour class actions by the New York section of the National Employment Lawyer's Association on the white collar exemptions under the FLSA.

Fourth, DTS is committed to litigating this case to conclusion and will dedicate the resources necessary to vindicate the rights of the class members.

Thus, DTS should be appointed class counsel in this case.

### CONCLUSION

For the forgoing reasons, plaintiffs respectfully request that this Court issue an Order:

1.    requiring the issuance of an expedited notice as set forth in Exhibit A to the affirmation of J. Nelson Thomas to all current and former hourly employees of the defendants whose pay was subject to an automatic deduction even when employees performed compensable work;

2.    requiring defendants to provide to plaintiffs' counsel a list both electronically (in an Excel spreadsheet) and with each item of the employee's name, current or last known address, phone number, social security number, location of employment, dates of employment, date of birth and e-mail address designated as a separate field and by hard copy, of all current and former employees who are/were subject to the Meal Break Deduction Policy within 15 days of the issuance of the order;

3.    requiring defendants to post notices and opt-in forms in a conspicuous place (such as break rooms and next to all time clocks used by hourly employees) at

defendants' locations where employees can see such notices during the pendency of the lawsuit;

4.     requiring defendants to e-mail such notices and opt-in forms to employees;

5.     requiring defendants to publicize such notice five times in defendants' employee newsletter or other employee communications; and

6.     for such other relief as this Court deems just and proper.

Dated: April 1, 2009

**DOLIN, THOMAS & SOLOMON LLP**

By:    s/ J. Nelson Thomas
        J. Nelson Thomas, Esq.
        Justin M. Cordello, Esq.
        *Attorneys for Plaintiffs*
        693 East Avenue
        Rochester, New York 14607
        Telephone:  (585) 272-0540
        nthomas@theemploymentattorneys.com
        jcordello@theemploymentattorneys.com