IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREW KUZNYETSOV, et al., )
)
   Plaintiffs, )
)
vs. ) Civil Action No.
)
WEST PENN ALLEGHENY HEALTH SYSTEM, )
INC., et al., )
)
   Defendants. )

AMBROSE, Chief District Judge

## **MEMORANDUM ORDER OF COURT**

Plaintiffs filed a Motion for Expedited Collective Action Notification for their Fair Labor Standard Act ("FLSA") claim that the Defendants' Meal Break Deduction Policy is unlawful under 29 U.S.C. §216(b) of the FLSA. (Docket No. 3). Specifically, Plaintiffs argue that Defendants' practice of automatically deducting thirty minutes from employees' recorded time after five or six hours worked violated the FLSA. Therefore, Plaintiffs seek an order conditionally certifying the class and court approved notice to all current and former hourly employees of Defendants who were subject to the automatic pay deduction. Plaintiffs also seek the following: A list, provided by Defendants, of each employee's name, current or last known address, telephone number, social security number, location of employment, dates of employment, date of birth, and e-mail address of all current and former employees who are/were subject to the Meal Break Deduction Policy; Notices and opt-in forms to be posted by Defendants in a conspicuous place at Defendants' locations where employees can see such notices during the pendency of the lawsuit; Notices and opt-in forms to be e-mailed to employees; and Notices to be publicized five times in Defendants' employee newsletter or other employee communication.

## A. Conditional Certification

### 1. Requirements

The FLSA mandates employers to pay employees at least the minimum wage for all hours worked. 29 U.S.C. § 201, *et seq*. The FLSA permits employees to maintain collective action under 29 U.S.C. §216(b) on their own behalf and on behalf of all similarly situated employees. Plaintiffs have petitioned to proceed collectively against Defendants for automatic meal break wage deductions that occurred when work was performed during that time under 29 U.S.C. § 216(b). In relevant part, this section authorizes collective actions against employers:

> by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); *Sperling v. Hoffman La-Roche, Inc.*, 862 F.2d 439, 444 (3d.Cir.1988) (two requirements for §216(b) class action are that employees are similarly situated and each class member file individual consent to opt-in).

The FLSA does not define the term "similarly situated" and neither the United States Supreme Court nor the Court of Appeals for the Third Circuit provide direct guidance on determining whether potential class members are similarly situated. In the absence of definitive precedent, district courts in the Third Circuit have developed a two-stage test. *Kronick v. bebe Stores*, No. 07-4514, 2008 WL 4546368, at 1 (D. N.J. Oct. 2, 2008). During the initial notice stage, the court determines whether a class should be conditionally certified for the purpose of notice to potential opt-in plaintiffs and for pretrial discovery regarding their individual claims. *Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D.Pa.2001); *Stanislaw*, at 1, *citing*, *Mooney v. Aramaco Servs. Co.*, 54 F.3d 1207,1213-14 (5th Cir.1995). In so doing, the court preliminarily determines whether the proposed class consists of similarly situated employees. *Smith v. Sovereign Bancorp*, No. 03-2420, 2003 WL 22701017, at 2 (E.D. Pa. Nov. 13, 2003). Courts generally examine the

pleadings and affidavits of the parties to decide whether the proposed class members are similarly situated, *see Aquilino v. Home Depot, Inc.*, No. 04-4100, 2006 WL 2583563 at 1 (D.N.J. Sept. 7, 2006), and utilize a "fairly lenient" standard in rendering such a determination. *Pontius v. Delta Financial Corporation*, No. 04-1737, 2005 WL 6103189, 3 (W.D. Pa., June 24, 2005). *See also De Asencio v. Tyson Foods*, 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) (at first tier, plaintiffs have "fairly low burden" to prove similarly situated requirement). If the plaintiff meets the requisite showing, the class is conditionally certified for the purpose of notice and discovery. *Armstrong v. Weichert Realtors*, No. 05-3120, 2006 WL 1455781, at 2 (D. N.J. May 19, 2006). Once the class is conditionally certified, notice is given to the potential plaintiffs so that they may elect whether to opt-in to the action. *Stanislaw*, at 1.

In the second stage of class certification, after the court is more fully informed through discovery, the defendant may move to decertify the class on the basis that the "similarly situated" standard has not been met and the court makes its final certification decision. *Sperling*, 826 F.2d at 444; *Pontius,* at 3. The present matter involves a stage one analysis.

The district courts in this Circuit do not unanimously agree on the appropriate level of proof for a stage one determination that potential class members are similarly situated. Some courts confer conditional certification and notice if a plaintiff advances an allegation that he and the proposed class members were victims of a single employer policy. *De Asencio*, 130 F.Supp.2d at 663; *Goldman v. Radio Shack Corp.*, No. 03-0032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003). Under this evidentiary approach, preliminary certification is granted upon a mere allegation that the putative class members were injured by a single policy of the defendant employer. *Id*. (conditional certification requires only lax showing of similarly situated). Others courts apply a more exacting, yet still relaxed, test requiring the plaintiffs to show a modest factual nexus between their situation and that of the proposed class members. *Aquilino*, at 2; *Smith,* at 2; *Armstrong*, at 2 (conditional certification issue determined under "modest factual showing" standard); *Bishop v.*

3

*AT&T Corp.,* No. 08-468, 2009 WL 763946, 2-3 (W.D. Pa. March 23, 2009); *Stanislaw v. Erie Indem. Co.*, No. 07-1078, 2009 WL 426641, 1-2 (W.D. Pa. Feb. 20, 2009); *Dreyer v. Altchem Environmental Services, Inc.*, No. 06-2393, 2006 WL 3676013, at 2 (D. N.J. Dec. 12, 2006) (plaintiffs must show factual nexus between their situation and situations of other employees); *Bond v. National City Bank of Pennsylvania,* 2006 WL 1744474, 4 (W.D.Pa. June 22, 2006); *Smith*, at 2-3.

In *Smith*, the district court observed that the mere allegation test contradicted the design of the FLSA's opt-in requirement to limit the size of collective actions, and chose to adopt the modest factual showing approach. *Id*. at 2-3. This evidentiary standard requires a plaintiff to show "a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.' " *Aquilino*, at 1 (citation omitted). The *Smith* court described this standard of proof, as a "more stringent-although nonetheless lenient-test that requires the plaintiff to make a 'modest factual showing' that the similarly situated requirement is satisfied." *Id*. at 2 (citation omitted); *see*, *Mueller*, 201 F.R.D. at 428 (requiring plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made" that potential plaintiffs are similarly situated); *Bosley v. Chubb Corp.,* No. 04CV4598, 2005 WL 1334565, 3 (E.D. Pa. June 3, 2005). I agree with the reasoning of those courts that have required "modest factual showing" approach. This approach "enables a court to narrow the potential class from all of a defendant's employees to just those employees who can possibly" have a claim under the same policy as allegedly affected Plaintiffs. *Smith*, at 3.

### 2. Affirmations and Opt-In Consent Forms

To support their position, Plaintiffs submit the affirmations of six employees all of whom were nurses: Andrew Kuznyetsov, Charles Boal, Marthann Heilman, Annamarie Finucan, Daranette Smiley-McKeithen, and Maxine Thomas. (Docket No. 5, ¶¶12-18). The affirmations are

substantially similar. *Id.* at ¶¶13-18, Docket Nos. 5-7 through 5-12). Therein, they assert that they are employees of Defendants and that they, and all hourly employees, were subjected to an automatic pay deduction of 30 minutes from pay checks after 5 hours worked in shift. (Docket Nos. 5-7 through 5-12, ¶¶3-4). They further contend that they, and others like them, were not paid when they were required to work through, or during part of, their 30 minute meal breaks, nor did Defendants ensure that they received their full meal break. (Docket Nos. 5-7 through 5-12, ¶¶5-40).

Defendants argue that the affirmations are fatally flawed because: 1) they only allege that they worked through meal periods as a result of patient care needs, while they are seeking conditional class certification for all hourly employees, even though there are employees who do not perform any patient care services; and 2) they fail to disclose whether the affiants have personal knowledge as it relates to situations surrounding the generalized "other employees" discussed in the affidavits and, therefore, contain inadmissable hearsay.[1] (Docket No. 68, pp. 4-5, 26-28). With regard to the first argument, I disagree with Defendants that the affiants only allege that they worked through meal periods as a result of patient care needs. To the contrary, they also assert that they work through meals due to staffing issues. (Docket Nos. 5-7 ¶12; 5-8, ¶12; 5-9, ¶12; 5-10, ¶12; 5-11, ¶12; and 5-12, ¶12. Consequently, I do not find merit to this argument.

With regard to Defendants' hearsay argument, however, I agree with Defendants that the information contained in the affirmations relating to "other employees" is inadmissible hearsay.

---

[1] Specifically, Defendants argue that the affirmations are fatally flawed in that they failed to: 1) disclose that affiants have personal knowledge as to whether the employees they observed working were supposed to be on a bona fide meal break; 2) state that the affiants have personal knowledge of whether such employees followed West Penn's policies and procedures for canceling the automatic meal break deduction; 3) state that the affiants have personal knowledge of whether such employees were paid for working through their meal breaks; and 4) state that Plaintiffs, affiants, or anyone of the 12,000 proposed class members were denied minimum wage or payment for overtime. (Docket No. 68, pp. 12, 27-28).

5

> Only admissible evidence may be considered in deciding a motion for conditional class certification under 29 U.S.C. § 216(b) of the FLSA. *See, e.g., Dreyer v. Altchem Environmental Services, Inc.*, 2007 U.S. Dist. LEXIS 71048 at *7 (D. N.J.2007) ("courts will not consider affidavits that are not founded on personal knowledge"); *Ulysse v. Divosta Bldg. Corp.*, 2006 U.S. Dist. LEXIS 89414 at *4, 2006 WL 3618449 (S.D. Fla.2006) (hearsay in plaintiff's affidavit disregarded); *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 865-866 (S.D. Ohio 2005) ("hearsay statements cannot be considered in connection with a Plaintiff's § 216(b) motion for the purpose of determining whether other employees are similarly situated"); *Richards v. Computer Sciences Corp.*, 2004 U.S. Dist. LEXIS 19637 at *4, 2004 WL 3517039 (D.Ct. 2004) (hearsay statements in affidavit in support of motion pursuant to 29 U.S.C. § 216(b) will be stricken). In *Harrison*, for example, the court denied conditional certification because the plaintiff's statement that "other employees also said they had complained to management [about] not getting paid for all of the hours they had worked" was based upon inadmissible hearsay. *Id.* at 865.

*Stanislaw,* at 2. While I recognize that Plaintiffs' evidentiary burden at this stage is light, the evidence I consider must be admissible evidence. *Id.* Since the information contained in the affirmations relating to "other employees" is not based on personal knowledge, the evidence is inadmissible hearsay. As a result, I will not consider the hearsay statements contained therein.

Defendants also argue that the opt-in consent forms are so vague and ambiguous that they lack any probative value on the issue of similarly situated. (Docket No. 68, pp. 24-26). After a review of the same, I agree. The opt-in consent forms merely state the Defendant for which they worked and that they consent to participate in the lawsuit. *See, e.g.* Docket Nos. 11-16, 18-25, 45, 50, 59-61, and 67. They provide no information to allow me to determine if they are similarly situated to Plaintiffs as it relates to the meal break deduction policy claim. Consequently, I find they hold no evidentiary value in my determination.

This does not end the inquiry, however. There still may be sufficient evidence at this stage to permit conditional certification.

### 3. The Policies

In October 2006, Defendants implemented a system called KRONOS which automatically deducts thirty minutes of time from each non-exempt employee's pay for every five to six

consecutive hours worked, depending on the location. West Penn Allegheny Health System's ("West Penn") policy provides as follows:

> Meal Periods are not considered as hours worked. Work schedules of eight (8) hours or greater shall provide for an uninterrupted, unpaid meal period of at least one-half (½) hour during each work schedule. If the employee is required to perform any job-related duties during the meal period, the time is to be paid.

(Docket No. 68-5, p. 18). After May 2006, West Penn changed its policy to provide for an unpaid meal period of thirty minutes after every five or six hours worked, depending on the employee's location. (Docket No. 68-5, ¶13). A similar policy exists for the Western Pennsylvania Hospital (WPH) and Canonsburg General Hospital ("CGH"). (Docket No. 68-5, pp. 20, 26). If these employees miss a meal break, then the employee must inform one of the timekeepers of the need to cancel the automatic deduction. (Docket No,. 68-5, ¶16). The manner of informing the timekeepers varies between locations and departments. *Id.* at ¶17.

Allegheny General Hospital ("AGH") also has a policy for meal time for non-exempt employees. Under a collective bargaining agreement ("CBA"), AGH employees are afforded "[o]ne (1) thirty (30) minute meal time per shift, if the shift is a minimum of five (5) hours,...and shall not be counted as time worked." (Docket No. 68-3, p. 6). The CBA further provides that employees who are unable to take the thirty minute meal break shall notify their manager using the established process in place for that department. (Docket Nos. 68, p. 13; 68-4, ¶3, 68-4, p. 6). Notification is accomplished by completing and submitting a "blue card." (Docket No. 68-4, ¶5).

Thus, according to Defendants, all of the policies at issue apply to all non-exempt employees and require the employees to inform/notify another of the need to cancel the automatic deduction. However, the U.S. Dept. Labor, Employment Standards Administration, Wage and Hour Division, Fact Sheet #53 provides that "[w]hen choosing to automatically deduct 30-minutes per shift, the employer must ensure that the employees are receiving the full meal break." U.S. Dept. Labor, Employment Standards Administration, Wage and Hour Division, Fact Sheet #53 - The

7

Health Care Industry and Hours Worked. (Docket No. 5-6, p. 2); *see also,* 29 C.F.R. § 785.13 ("Duty of management. In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."); *see also,* 29 C.F.R. §785.19. Arguably, Defendants' policies shift the responsibility to the employees. Consequently, I find this evidence is sufficient at this stage to proceed with conditional certification.

In opposition, Defendants assert that Plaintiffs failed to identify a common policy or plan that violates the FLSA and, therefore, cannot demonstrate that they are "similarly situated" to putative class members. (Docket No. 68, pp. 20-23). Specifically, Defendants argue that since the implementation of KRONOS, over 413,659 automatic meal break deductions were cancelled for 7476 non-exempt employees. *Id.* at 18. In fact, all of the named Plaintiffs, with the exception of Maxine Thomas, who retired from AGH prior to the implementation of KRONOS, had the automatic meal deductions cancelled multiple times. (Docket No. 68-5, ¶¶19-24). Defendants also argue that the CBA provides that "[f]requent, ongoing missed meal periods will be reviewed and resolved through the Labor/Management committee" and that since October of 2006, the union at AGH has not raised a single grievance concerning the failure to pay for a missed meal period. (Docket Nos. 68-4, ¶¶3, 7; 68-4, p. 6).). Neither argument, however, alters the fact that the policies apply to all non-exempt employees and arguably shifts the responsibility to the employees to ensure that the deduction is cancelled.[2]

Defendants are correct that the FLSA does not require employers to make meal breaks

---

[2]This does not mean that ultimately the policies may not be found to be "lawful," as Defendants argue. Rather, it means that at this preliminary stage, I find sufficient evidence to permit conditional certification.

available. When an employer chooses to automatically deduct thirty minutes per shift, however, the Department of Labor suggests that "the employer must ensure that the employees are receiving the full meal break." U.S. Dept. Labor, Employment Standards Administration, Wage and Hour Division, Fact Sheet #53 - The Health Care Industry and Hours Worked. (Docket No. 5-6, p. 2).

Finally, Defendants argue that Plaintiffs' claims are not suitable for collective action treatment because they require individualized inquiries but, if they are, they should be limited to nurses having patient care responsibilities at the same facilities as the Plaintiffs. (Docket No. 68, pp. 28-35). At this initial stage, there is no dispute that the policies affect all non-exempt employees, regardless of job title or work location. Any dissimilarities may be reevaluated in the second stage of class certification, after discovery is complete. *Sperling*, 826 F.2d at 444; *Bishop,* at 5; *Pontius,* at 3. Consequently, I find that initial conditional certification is warranted.

### B. Notification

With regard to notification, Plaintiffs seek the following:

1) A list, provided by Defendants, of each employee's name, current or last known address, telephone number, social security number, location of employment, dates of employment, date of birth, and e-mail address of all current and former employees who are/were subject to the Meal Break Deduction Policy;

2) Notices and opt-in forms to be posted by Defendants in a conspicuous place at Defendants' locations where employees can see such notices during the pendency of the lawsuit;

3) Notices and opt-in forms to be e-mailed to employees; and

4) Notices to be publicized five times in Defendants' employee newsletter or other employee communication.

I agree with Defendants that Plaintiffs' notice proposals are improper and the content of the proposed notices is objectionable. (Docket No. 68, pp. 38-42). First, I find that first-class mail is appropriate as the sole form of notice.

> In contrast [to first-class mail], electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that

9

> could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sits with great ease. First class mail ensures, at the outset, that the appropriately targeted audience received the intended notification and maximizes the integrity of the notice process.

*Reab v. Electronic Arts, Inc.,* 214 F.R.D. 623, 630-31 (D.Colo. 2002). Plaintiffs have not provided any reason why first-class mail would be inadequate in this case. Therefore, notification in this case will be limited to first-class mail only.

Second, the personal information requested by Plaintiffs exceeds that which is necessary and appropriate. The information that will be required to be produced, therefore, is limited to the names and mailing addresses of non-exempt employees. Telephone numbers shall be provided for the sole purpose of running "reverse directory checks for putative members with outdated addresses and not to make calls to prospective class members." *Bishop,* at 6. Said information shall be provided to Plaintiffs within sixty (60) days. A protective order is hereby entered limiting the use of telephone numbers to an address verification devise.

Third, I further order Plaintiffs' counsel to immediately cease and desist any form of notification not pre-approved by the court.

Fourth, I agree with Defendants that the opt-in period should be limited. (Docket No. 68, p. 41). I find, however, that a sixty (60) day opt-in period is reasonable.

Fifth, I agree with Defendants that the content of the proposed notice is objectionable. (Docket No. 68, pp. 41-42). I find Defendants' request that I afford the parties the opportunity to develop and agree upon the contents of a notice to be approved by this court to be reasonable. If the parties cannot agree upon the contents, the parties shall cross-file proposed notices. Said submission must be filed within thirty (30) days of the date of this order.

    **C.    Appointment of Class Counsel**

Plaintiffs request that the law firm of Dolin, Thomas & Solomon LLP ("DTS") be appointed

class counsel. (Docket No. 4, pp. 32-34). Defendants do not oppose this request. *See,* Docket No. 68. Consequently, I appoint DTS as class counsel.

THEREFORE, Plaintiffs' Motion for Expedited Collective Action Notification (Docket No. 3) is granted in part and denied in part as set forth above.

IT IS SO ORDERED.

BY THE COURT:


/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge


Dated: June 1, 2009