**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW KUZNYETSOV, ET AL.,<br><br><br>*Plaintiffs,*<br><br>v.<br><br>WEST PENN ALLEGHENY HEALTH SYSTEM,<br>INC., ET AL.,<br><br>*Defendants.* | Civil Action<br>No. 09-CV-379<br><br>Chief Judge Donetta Ambrose<br><br>To Be Electronically Filed |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law in opposition to defendants' motion to dismiss plaintiffs' claims arising under the Employee Retirement and Income Security Act ("ERISA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO") and estoppel.  As set forth below, plaintiffs' claims should not be dismissed as plaintiffs have adequately pled allegations concerning defendants' conduct, which taken as true, would plausibly suggest defendants' violation of each of these laws.

### FACTS

Plaintiffs filed this action against West Penn Allegheny Health System, Inc., The Western Pennsylvania Healthcare System, Inc., Alle-Kiski Medical Center, Allegheny General Hospital, Allegheny General Hospital – Suburban Campus, Canonsburg General Hospital, The Western Pennsylvania Hospital, Christopher T. Olivia, John Lasky and Retirement Plan for Employees of West Penn Allegheny Health System[1].

---

[1]     On June 1, 2009 this Court granted plaintiffs' motion for expedited notice to affected employees by conditionally certifying this action and authorizing notice of this lawsuit to all non-exempt employees that have thirty minutes automatically deducted for meal breaks. *See* Docket No. 81.

Specifically, plaintiffs' claims arise from defendants' illegal pay policies (referred to herein as the "Unpaid Work Policies") as follows:

- "Meal Break Deduction Policy:" defendants computerized time-keeping system automatically deducts one half-hour from employees' paychecks each day for a meal break even though defendants fail to ensure that employees were relieved from duty for a meal break and employees did in fact perform work during those breaks and were not paid for that time.  *See* Docket No. 1, Complaint ("Complaint") ¶¶ 79-98.

- "Unpaid Preliminary and Postliminary Work Policy:" defendants failed to pay plaintiffs and class members for all time spent performing work before  and/or after the end of their scheduled shift. *See* Complaint ¶¶ 99-102.

- "Unpaid Training Policy:" defendants failed to pay plaintiffs and class members for all time attending compensable training programs. *See* Complaint ¶¶ 103-107.

Defendants know that plaintiffs and class members are performing such work pursuant to their Unpaid Work Policies, yet, fail to ensure that plaintiffs and class members are compensated for such work.  *See* Complaint ¶ 109.  Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for time worked, even though Plaintiffs and Class Members were not receiving pay for all time worked including applicable premium pay.  *See* Complaint ¶ 112.

As a result plaintiffs' claims include:

- Violations of ERISA, due to defendants' failure to keep accurate records, including the hours worked each day, the total hours worked each week and the total overtime compensation for each work week, and failing to credit employees with all hours of service they were entitled to be paid or investigating whether such hours should be credited (*see* Complaint ¶¶ 119-121, 138-142);

- Violations of RICO, resulting from defendants' scheme to deceive plaintiffs and deprive plaintiffs of their entitlement to wages and overtime, including the use of the mail to send misleading payroll checks (*see* Complaint ¶¶ 122-134, 143-145); and

- Estoppel, due to defendants' deliberately misrepresenting to plaintiffs and class members that they were being properly paid for time worked even though defendants knew they were not receiving pay for all time worked including applicable premium pay (*see* Complaint ¶¶ 108-114, 146-147).

Because plaintiffs have set forth plausible allegations in their complaint for each cause of action, defendants' motion to dismiss should be denied.

## <u>ARGUMENT</u>

### I.     MOTIONS TO DISMISS ARE RARELY GRANTED.

Plaintiffs' complaint states valid claims against the defendants for violations of ERISA, RICO and estoppel and dismissal is not warranted.  In order to survive a motion to dismiss, a complaint must merely plausibly suggest the conclusion that defendants violated the law.  Thus, in this case, the complaint must allege facts that (taken as true) plausibly suggest defendants failed to pay plaintiffs all wages due for compensable work including applicable premium pay resulting in violations of ERISA and RICO and claims for estoppel. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) (holding that to state a claim of conspiracy under the Sherman Act, complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made").

In reviewing a motion to dismiss, the court must presume that the allegations in the complaint are true and resolve all doubts and inferences in favor of the non-moving party. *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006); *Burroughs v. MGC Servs., Inc.,* Civil Action No. 08-1671, 2009 WL 959961, at *1-2 (W.D. Pa. Apr. 7, 2009) (Standish, J.); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 173 (2d Cir. 1998); *see also Yoder v. Orthomolecular Nutrition Inst.,* 751 F.2d 555, 562 (2d Cir. 1985) ("It is elementary that, on a motion to dismiss, a complaint must be read as a whole, drawing all inferences favorable to the pleader.").

3

Furthermore, the courts determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir. 2002); *Burroughs*, 2009 WL 959961, at *1-2. "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (internal citations and quotations omitted). In addition, the Court's consideration is limited to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference. *See Walsingham v. Biocontrol Tech., Inc.*, 66 F.Supp.2d 669, 676 (W.D. Pa. 1998) (Cindrich, J.).

To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." *Phillips v. County of Allegheny,* 515 F.3d 224, 232-34 (3d Cir. 2008). This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* A plaintiff is not required to present evidence in support of its complaint in order to survive dismissal. *See Weisman v. LeLandais*, 532 F.2d 308, 310-11 (2d Cir. 1976) *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974):

> "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."

*See also Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) ("consideration is limited to facts stated on the face of the complaint"). Accordingly, prior to discovery, dismissal of a complaint is premature.

Here, plaintiffs' Complaint gives defendants ample "notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Specifically, plaintiffs allege defendants' violated ERISA and RICO with sufficient particularity that these claims should not be dismissed. Defendants' violations of ERISA and RICO are the consequence of their failure to ensure that plaintiffs and class members are credited and/or compensated for all hours worked. Further, the Complaint sufficiently establishes plaintiffs' estoppel claims in that defendants deliberately concealed and misled plaintiffs that they were paid properly in alleging that defendants be estopped from raising any statute of limitations defenses.

Plaintiffs and class members should have been compensated for the time they worked for defendants. Because defendants' scheme to not pay for such time and the failure to properly credit such time to employees violated both ERISA and RICO, their complaint should not be dismissed.

## II.   PLAINTIFFS' RICO CLAIMS SHOULD NOT BE DISMISSED.

Defendants claim that plaintiffs' RICO claims are pre-empted by the FLSA, are incompatible with the FLSA's opt in mechanism and were not sufficiently pled. These arguments should be rejected.

### A.   Plaintiffs' RICO Claims Are Not Preempted By the FLSA.

Defendants' contention that plaintiffs' RICO claims are preempted by the FLSA claims is legally and factually incorrect. Factually, plaintiffs' RICO claims seek relief for wrongful conduct not covered or prohibited by the FLSA and therefore cannot be preempted by the FLSA. In any event, preemption does not apply legally because the FLSA is not the exclusive remedy for claims that it does cover.

5

The Third Circuit recognizes three categories of preemption as set forth by the Supreme Court: "(1) express preemption, which arises when there is an explicit statutory command that state law be displaced; (2) field preemption, which arises when federal law so thoroughly occupies a legislative field as to make reasonable the inference the Congress left no room for the States to supplement it; and (3) conflict preemption, which arises when a state law makes it impossible to comply with both state and federal law or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *St. Thomas—St. John Hotel & Tourism Ass'n, Inc., v. Gov't of U.S. Virgin Islands*, 218 F.3d 232, 238 (3d Cir. 2000) (internal quotation marks and citations omitted). Moreover, defendants' argument is readily disposed of by this Court's decisions in *Burkhart-Deal v. Citifinancial, Inc.*, C.A. No. 8-1289, 2008 WL 4793749, at *3 (W.D. Pa. Oct. 31, 2008) (Ambrose, C.J.) and *Zelinsky v. Staples, Inc.*, No. 08-684, 2008 WL 4425814 (W.D. Pa. Sept. 29, 2008) (Ambrose, C.J.) where this Court refused defendants request to extend the preemption doctrine to state wage and hour claims.

Defendants do not, and cannot, claim that express, field or conflict preemption apply in this case. There is nothing in the FLSA expressly preempting RICO claims. Further, defendants have failed to show that plaintiffs' RICO claims stand as an obstacle to the accomplishment and execution of the full purposes of the FLSA.

First, plaintiffs' RICO claims seek relief for defendants' participation in the conduct of the enterprise's affairs through a pattern of racketeering activity by devising a scheme to obtains plaintiffs and class members property by means of false or fraudulent representations some of which were made in the misleading paychecks which defendants mailed. *See*

Complaint § 145.  Significantly, such claims are *not* covered by the FLSA and plaintiffs have no remedy other than RICO and are clearly not preempted by the FLSA.

Second, to the extent that plaintiffs' RICO claims do seek relief for claims covered by the FLSA, e.g. unpaid overtime, they are still not preempted because the FLSA does not provide an exclusive remedy.  *Zelinsky,* 2008 WL 4425814, at *3 (citing *Ellis v. Edward D. Jones & Co., L.P.*, 527 F.Supp.2d 439, 449 (W.D. Pa. Dec. 18, 2007) (Gibson, J.)) (Court declining to decide whether the FLSA is the sole remedy for enforcement of FLSA rights). Thus, because plaintiffs' RICO claims address conduct not prohibited by the FLSA and because the FLSA is not an exclusive remedy, plaintiffs' RICO claims are clearly not preempted.

Contrary to defendants' argument, courts routinely uphold RICO claims in the employment compensation context.  *See e.g., Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. CV 08-083-PHX-MHM, 2008 WL 4446539 (D. Ariz. Sept. 30, 2008) (finding plaintiffs' RICO claims pled sufficiently along with FLSA claims); *Marceau v. Int'l Bhd. of Elec. Workers (IBEW),* No. 05-02874-PHX-MHM, 2006 WL 1889600 (D. Ariz. July 7, 2006) (plaintiffs adequately stated a RICO claim in the context of an employment dispute regarding their compensation); *Aguilar v. Mega Lighting, Inc.*, No. CV 08-07313 DDP (JTLx), 2009 WL 940941 (C.D. Cal. Apr. 6, 2009)(defendants' scheme of underpaying workers and misreporting workers true hours was sufficient to plead extortion under RICO); *ARO Corp. v. Termini Assocs.*, No. CIV-89-1198E, 1990 WL 41470 (W.D.N.Y. Apr. 5, 1990) (court satisfied that plaintiff adequately alleged timely RICO claims in the context of employee compensation scheme); *Williams et al. v. Mohawk Indus., Inc.*, No. 08-13446, 2009 WL 1476702 (11th Cir. May 28,

2009) (court certifies class action brought by former employees against employer alleging violations of RICO).

Defendants cite *Choimbol v. Fairfield Resorts, Inc.*, No. 2:05cv463, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006) ("*Choimbol II*"), in support of their contention that the FLSA provides sufficient enforcement against wage and hour violations, thereby preempting plaintiffs' RICO claims. However, plaintiffs have not raised their RICO claims in an effort to remedy defendants' failure to pay earned wages. Rather, plaintiffs have alleged violations of RICO for defendants' misleading pattern of conduct with knowing and reckless disregard for plaintiffs' rights. Notably, prior to *Chomibol II*, the *Choimbol* court previously expressly upheld allegations like plaintiffs', finding that employees' paychecks contained actionable fraudulent misrepresentations, and were sufficient to sustain a RICO suit. *Choimbol v. Fairfield Resorts, Inc.*, 428 F.Supp.2d 437, 443-47 (E.D. Va. 2006) (*Choimbol I*) (denying defendants' motion to dismiss).

Further, defendants misguidedly cite a string of cases for the proposition that the plaintiffs' RICO claims are preempted by the FLSA. However, none of the cases cited by the defendants are persuasive because they do not involve the FLSA, but instead concern the preemption of dissimilar federal laws. *Danielsen v. Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1222-23 (D.C. Cir. 1991) (Service Contract Act of 1965); *Bodimetric Health Servs., Inc., v. Aetna Life & Cas.*, 903 F.2d 480, 486-87 (7th Cir. 1990) (Social Security Act); *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637-38 (2d Cir. 1989) (Energy Reorganization Act); *Livingston v. Shore Slurry Seal, Inc.*, 98 F.Supp.2d 594, 600-02 (D.N.J. 2000) (Davis-Bacon Act); *Brown v. Keystone Consol. Indus., Inc.*, 680 F.Supp. 1212, 1224 (N.D. Ill. 1988)

(Labor Management Relations Act); *Butchers' Union, Local No. 498 v. SDC Inv., Inc.,* 631 F.Supp. 1001, 1011 (E.D. Cal. 1986) (Labor Management Relations Act).

Desperately, defendants attempt to persuade the Court that plaintiffs' RICO claims should be dismissed by attaching a Notice of Voluntary Dismissal of Certain Claims from a similar case handled by plaintiffs' counsel. However, defendants fail to note that five days after dismissing the case plaintiffs' counsel re-filed these same claims including the RICO claims in New York State Court, Erie County. See. Ex. A. Plaintiffs' counsel agreed to dismiss the RICO claims and re-file them in state court to allow the district court to concentrate its limited resources on deciding plaintiff's motion for expedited notice to affected employees.

Accordingly, defendants' argument that RICO claims are preempted by the FLSA should be rejected.

## B.    Plaintiffs' RICO Claims Are Compatible with the FLSA.

Defendants ask this Court to dismiss plaintiffs' RICO claims because the opt in procedure under the FLSA is incompatible with the Rule 23 opt-out procedure applicable to their RICO claims. However, this argument has been been implicitly rejected by the Third Circuit Court of Appeals in its decision *De Ascencio v. Tyson Foods, Inc*., 342 F.3d 301 (3d Cir. 2003).[2]

In *DeAsencio*, the Court in a very important footnote disavowed defendants' argument here that the FLSA and Rule 23 actions are incompatible because of the "opt-in" nature of FLSA claims and the "opt-out" nature of Rule 23 claims.   The Court in footnote 14

---

[2]      In *DeAsencio*, the plaintiffs asserted both FLSA claims and Pennsylvania state law claims. 342 F.3d 301.  While the analysis of supplemental jurisdiction in *De Ascencio* resulted in the Court dismissing plaintiffs' state law claims, such a result would not be appropriate here as the plaintiffs in this action are asserting Federal RICO claims.

acknowledged that the mere fact that one federal claim is opt-in, while another federal claim is opt-out, does not divest the court of jurisdiction, or make the claims mutually incompatible.   In fact, the Court identified two claims under federal law where this might happen:

> A federal court could have subject matter jurisdiction over two federal claims, one requiring opt-in and the other opt-out. For example, a federal employment discrimination action might be brought by a plaintiff class that also maintains an FLSA overtime pay action against their employer. But the outcome may be different where one of the claims is based in state law. Federal courts are courts of limited jurisdiction. Where a party seeks supplemental jurisdiction of a state-law action, we will evaluate jurisdiction under the statutory principles of 28 U.S.C. § 1367.

*Id.* at 310 n.14.   Rather than dismiss the action on grounds of incompatibility, the Court declined to exercise supplemental jurisdiction over novel state law questions.   This clearly defeats defendants' argument that a district court may never hear an opt-in and opt-out claim in the same action.

Tellingly, defendants fail to cite any case law where a court has held the FLSA's opt in mechanism and a RICO class action to be incompatible.   Instead, defendants' rely exclusively on cases concerning the FLSA and state wage and hour laws, where courts engaged in analysis of supplemental jurisdiction of pendant state law claims.   *Moeck v. Gray Supply Corp.,* 2006 WL 42368 (D.N.J. Jan. 6, 2006); *Himmelman v. Cont'l Cas. Co.,* No. Civ. 06-166(GEB), 2006 WL 2347873 (D.N.J. Aug. 11, 2006); *Herring v. Hewitt Assocs., Inc.*, Civ. No. 06-267 (GEB), 2006 WL 2347875 (D.N.J. Aug. 11, 2006); *Otto v. Pocono Health Sys.*, 457 F.Supp.2d 522 (M.D. Pa. 2006); *Warner v. Orleans Home Builders, Inc.*, 550 F.Supp.2d 583 (E.D. Pa. 2008); and *Burkhart-Deal v. Citifinancial, Inc.,* No. 7-1747, 2008 WL 2357735, at *2 (W.D. Pa. June

5, 2008) (Ambrose, C.J.).   These cases are unpersuasive in this present context where plaintiffs have alleged violations of the FLSA and RICO, not state wage and hour claims.

Here, plaintiffs' Federal RICO claims are easily distinguishable from state wage and hour law claims asserted in the cases cited by defendants.   First, this Court has original subject matter jurisdiction as a federal question under 28 U.S.C. § 1331, because plaintiffs' RICO claims are based upon 18 U.S.C. § 1964(c) and 18 U.S.C. § 1962.   This Court will not need to rely upon its supplemental jurisdiction to hear plaintiffs' RICO claims.   Here, plaintiffs were sensitive to this Circuit's reluctance to extend their supplemental jurisdiction to hear both FLSA opt in cases and Rule 23 state wage and hour actions in the same matter and filed a separate state law action in Allegheny County Court alleging violations of the Pennsylvania wage and hour statutes.[3]   Second, plaintiffs' RICO and FLSA claims are distinct and arise from separate sets of facts.   This factual distinction is absent in the cases cited by defendants where the state wage hour violations and FLSA claims both rely upon defendants' failure to pay employees properly.   Further, courts allow RICO claims to proceed in the context of an FLSA collective action.   *See e.g., Stickle*, 2008 WL 4446539; *Aguilar*, 2009 WL 940941.

Moreover, dismissal of plaintiffs' RICO claims is premature as plaintiffs are not currently seeking certification of their RICO claims.   S*ee Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) (holding that class certification must be decided prior to standing issues).   The appropriate time for the court to address the question of simultaneous collective action and class action is when plaintiffs seek certification of the class action.   *See Oetinger v. First Residential Mortgage Network,* No. 3:06CV-381-H, 2007 WL 734859, *2 (W.D. Ky. Mar. 6,

---

[3]        Boal et al. v. Alle-Kiski Medical Center (GD-09-006480).

2007) ("First, the Court is fully aware of the potential difficulties posed by a simultaneous collective action under Section 216(b) of the FLSA (with its 'opt-in' language) and a Rule 23 class action (with its 'opt-out' provisions).  However, the appropriate time to address that question is whenever Plaintiffs actually attempt to certify this case as a class action."); As set forth above, at this stage of the litigation plaintiffs are not currently seeking certification.

Therefore, plaintiffs' RICO claims are not incompatible with the FLSA opt in mechanism and should not be dismissed.

**C.     RICO Claims Routinely Survive Motions to Dismiss.**

Courts in this district rarely grant motions to dismiss RICO claims.  *See Simon Prop. Group, Inc. v. Palombaro*, No. 08-1634, 2009 WL 1549293, at *3 (W.D. Pa. June 2, 2009) (Lancaster, J.) (denying motion to dismiss RICO claims because plaintiffs showed some measure of substantiation in their allegations of fraud); *Cont'l Cas. Co. v. Slonchka*, No. Civ. A. 04-1587, 2005 WL 2176834, at *7 (W.D. Pa. Aug. 18, 2005) (Cohill, J.) (denying motion to dismiss RICO claim because plaintiff pled facts supporting claim of mail and wire fraud with the particularity required under Rule 9(b)); *Kuligowska v. GNC Franchising, Inc.*, No. Civ.A. 00-2283, 2002 WL 32131024, at *5 (W.D. Pa. Nov. 25, 2002) (Mitchell, J.) (denying motion to dismiss RICO claims arising from alleged acts of mail fraud and wire fraud); *Aloe Coal Co. v. Int'l Union, United Mine Workers of Am.*, Civ. A. No. 91-1981, 1992 WL 465768, at *5 (W.D. Pa. Dec. 8, 1992) (Standish, J.) (denying motion to dismiss RICO claims because plaintiff properly pled that individual defendants conspired to violate § 1962(c)); *Westinghouse Elec. Corp. v. Carolina Power & Light Co.*, CIV. A. Nos. 89-826, 89-1383, 1990 WL 107428 (W.D. Pa. June 7, 1990) (Bloch, J.) (denying defendant's motion to dismiss RICO claims); *Moore v. Farley*, CIV. A. No. 88-2033, 1989 WL 90176, at *5 (W.D. Pa. Mar.

25, 1989) (Bloch, J.) (denying motion to dismiss RICO claims as time barred); *Wood &
Locker, Inc. v. Doran and Assocs.*, 708 F.Supp. 684, 688 (W.D. Pa. 1989) (Smith, J.) (denying
defendant's motion to dismiss RICO claims); *Bloch v. Prudential-Bache Sec.*, 707 F.Supp. 189,
195 (W.D. Pa. 1989) (Mencer, J.) (finding that RICO violations satisfied the pattern
requirements in the Third Circuit, and therefore denying motion to dismiss); *Blue Cross of W.
Pa. v. Nardone*, 680 F.Supp. 195 (W.D. Pa. 1988) (Mencer, J.) (denying defendant's motion
to dismiss RICO claims); *McCullough v. Shearson Lehman Bros., Inc.*, Civ. A. Nos. 86-2752 to
2758, 1988 WL 23008, at *4 (W.D. Pa. Feb. 18, 1988) (McCune, J.) (denying defendants'
motion to dismiss RICO claims); *Perfection Corp. v. Dresser Indus., Inc.*, 641 F.Supp. 782 (W.D.
Pa. 1986) (Weber, J.) (denying defendant's motion to dismiss RICO claim); *Hurst v. Sears,
Roebuck & Co.*, 613 F.Supp. 1210 (W.D. Pa. 1985) (Weber, J.) (denying defendants' motion
to dismiss RICO claims); *Joseph v. Algemene Bank Nederland, N.V.*, 592 F.Supp. 141, 146
(W.D. Pa. 1984) (Cohill, J.) (finding that plaintiffs had set forth facts sufficient to withstand
a motion to dismiss RICO claims).

Therefore, defendants' argument that courts routinely dismiss RICO claims on
motions to dismiss is incorrect.  Accordingly, this Court should deny defendants' motion to
dismiss plaintiffs' RICO claims.

### D.    Plaintiffs Have Stated a Claim Under Section 1962(c).

Defendants claim that plaintiffs' RICO claims fail to allege both a proper enterprise
and a pattern of racketeering activity and further argue that plaintiffs' RICO claims are time
barred.  These arguments should be rejected.

### 1. Plaintiffs Have Alleged A Proper Enterprise.

Defendants wrongly argue that plaintiffs have not adequately alleged a proper RICO

enterprise. A RICO enterprise consists of a "group of persons associated together for a common purpose of engaging in a course of conduct" and is proven by "evidence of an ongoing organization...and...that the various associates function as a continuing unit." *U.S. v. Turkette,* 452 U.S. 576, 583 (1981). The enterprise does not need to be a formally-organized association, but it must: (1) be an ongoing organization, (2) function as a continuing unit, and (3) be more than simply the pattern of racketeering activity—it must be an entity separate and apart from the pattern of activity in which it engages. *See id.*, at 583. Where an individual defendant and corporate defendant have been named as entities, although there may be overlap they are not the same entity and thus the requirements of 18 U.S.C. § 1962(c) are satisfied. *ARO Corp.*, 1990 WL 41470 at *4.

Here, there is no doubt from the Complaint that defendants, including the named institutional defendants, health centers, affiliates and the individual defendants are an ongoing organization, function as a continuing unit, and that there is a nexus between them and the racketeering activity. Plaintiffs specifically indentified all of the defendants in the action by name and alleged that they are related organizations, through common ownership, governing bodies, trustees and/or officers, sharing common management. *See* Complaint ¶¶ 14, 17, 18, 23, 24. Plaintiffs have also alleged that the individual defendants were involved in and perpetuated the scheme to defraud plaintiffs by virtue of their creation of, and oversight over the policies which misled plaintiffs about their owed wages. *See* Complaint ¶¶ 26-50 (Christopher T. Olivia); 51-73 (John Lasky) 6, 12, 123-129 (institutional defendants).

Plaintiffs have also pled that the enterprise and defendants are "distinct," in that intending to defraud hospital employees of their lawfully entitled wages (with the use of mail fraud) is separate and distinct from the operation of the hospital. *See* Complaint ¶¶ 18-21,

122-134.  Plaintiffs have clearly alleged that all defendants engaged in the predicate act with the other members of the enterprise.  *See* Complaint ¶¶ 127-128.  And, as described above, plaintiffs have also properly alleged that all defendants collectively had some part in directing the enterprise's affairs. *See* Complaint ¶¶ 26-50 (Christopher T. Olivia); 51-73 (John Lasky) 26-50; 6, 12, 123-129 (institutional defendants).  It is thus clear that all defendants functioned as a unit, and based on their common and continuous implementation of the illegal and misleading policies, each defendant shared the common purpose of defrauding plaintiffs.

Defendants' reliance on *Cedric Kushner Promotions, Ltd. v. King,* is misplaced in that the Court allowed plaintiffs' RICO to proceed and concluded that "person" corporate employee and "enterprise" corporation were distinct and legally different entities with different rights and responsibilities due to its different legal status and therefore applied the RICO provision. 533 U.S. 158, 163 (2001).  Moreover, "an employee who conducts the affairs of a corporation through illegal acts comes within the terms of [the RICO] statute that forbids any 'person' unlawfully to conduct an 'enterprise.'" *Caravella v. Hearthwood Homes, Inc.,* No. 05-CV-1529 (DRH), 2007 WL 2886507, *5 (N.D.N.Y. Sept. 27, 2007) (citing *Cedric Kushner Promotions, Ltd.,* 533 U.S. at 163).  "In order to conduct or participate in the conduct of an enterprise's affairs, 'one must have some part in directing those affairs.'" *Caravella,* 2007 WL 2886507 at *6 (citing *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993)).

Plaintiffs have clearly alleged that all defendants engaged in the predicate act with the other members of the enterprise.  *See* Complaint ¶¶ 127-128.  And, as described above, plaintiffs have also properly alleged that all defendants collectively had some part in directing the enterprise's affairs.

Based on the complaint's allegations, plaintiffs have sufficiently pled a separate enterprise and therefore have set out a claim under RICO.   Yet, in the event the Court determines that additional allegations are necessary, plaintiffs respectfully request an opportunity to re-plead.

### 2. Plaintiffs Have Alleged a Pattern of Racketeering.

Defendants are incorrect that plaintiffs have not adequately alleged a pattern of racketeering.  A "pattern of racketeering activity" is defined as at least two predicated acts within a ten year period.  18 U.S.C. § 1961(5).  In addition, plaintiffs must show that the predicate acts are "related" and amount to or pose a threat of "continued" criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989).  Under RICO, a predicate act is any of the acts listed in 18 U.S.C. § 1961(1), which includes among other things, activity related to mail fraud.  To state a mail fraud claim, plaintiffs must adequately allege defendants (1) engaged in a scheme or artifice to defraud for the purposes of obtaining money or property and (2) use of the mail in furtherance of the scheme.  *See U.S. v. Yusuf*, 536 F.3d 178, 187 (3d Cir. 2008).

Plaintiffs have alleged a pattern of racketeering activity involving more than one predicate act—indeed plaintiffs have alleged mail fraud on at least 100 occasions—which defendants do not contest.   Plaintiffs have also alleged that mailing the payroll checks was part of the overall goal of receiving the financial benefits of the scheme and occurred on a regular basis, thus making each activity related.  *See* Complaint ¶ 125.  As part of the normal payroll process, it is clear that there is a threat of continued criminal activity.   Plaintiffs specifically alleged each of these requirements:

- Defendants' predicate acts were related, because they reflected the same purpose or goal (to retain wages and overtime pay due to Plaintiffs for the economic

benefit of defendants and members of the enterprise); results (retention of wages and overtime pay); participants (defendants and other members of the enterprise); victims (Plaintiffs); and methods of commission (the Scheme and other acts described in the Complaint). The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time. *See* Complaint ¶ 128.

Having alleged more than enough to show the relatedness of defendants' predicate acts, it is of no import that plaintiffs have not named individuals who prepared the checks, or what the checks included. Plaintiffs have sufficiently stated that the checks were misleading in that they did not represent the wages employees were entitled to under the law, and were part of the scheme of depriving employees of the wages. *See* Complaint ¶ 124-126. Moreover, as alleged, the fraud perpetrated by defendants goes beyond the act of preparing the checks, as the checks themselves were only the last step in the process of misleading plaintiffs about the wages they were entitled to by virtue of defendants' illegal Unpaid Work Policies—which were propagated and maintained by all defendants. *See* Complaint ¶¶ 78-107.

Additionally plaintiffs' complaint clearly sets forth with sufficient particularity that defendants' scheme involved the intentional, repeated and continued mailing of paychecks, defendants misrepresented the hours plaintiffs worked, and the wages they were owed. *See* Complaint ¶¶ 123-126. Clearly, plaintiffs have adequately stated the elements required to plead mail fraud. As to the other facts defendants claim to be lacking, plaintiffs' allegations sufficiently set forth when the acts occurred, detailing that such mailings occurred at least 100 times, within the last ten years. *See* Complaint ¶¶ 123-126. Nonetheless, in this case, where the violation occurred with respect to hundreds if not thousands of employees, each pay period, it would not be feasible for plaintiffs to list in their complaint, each and every paycheck on each and every payday, for each and every employee. Yet by virtue of the consistent and regular mailing of paychecks each pay period, defendants have been

adequately placed on notice of when the fraud occurred.  Similarly, as to where the violation occurred, plaintiffs specifically alleged that the payroll checks were mailed either to the plaintiffs, or between defendants' business locations.  *See* Complaint ¶ 125.  In the context of such widespread mass mailings to plaintiffs, defendants' particularity argument is obviously an attempt to semantically claim plaintiffs have failed to plead fraud specifically.  However, from the face of the complaint, defendants are adequately apprised of when and where the fraud occurred.

Defendants incorrectly argue that plaintiffs were aware of defendants' misrepresentations, and therefore have not alleged a scheme to defraud.  However, as alleged in the complaint, the payroll checks mailed to plaintiffs were intentionally false and deceptive calculated to deceive plaintiffs as to their entitlement to wages and overtime.  *See* Complaint ¶¶ 124-126.  Plaintiffs were not aware of defendants' scheme to mislead them through the use of false and deceptive payroll checks, and therefore relied to their detriment on defendants' misrepresentations that they were being properly compensated.  *See* Complaint ¶¶ 113-114.  Defendants' reliance on *Walter v. Palisades Collection, LLC, Lundy v. Hochberg,* and *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.* is misguided because, in those cases, plaintiffs had actual knowledge that defendants' misrepresentations were false, and therefore could not show reasonable reliance.  480 F.Supp.2d 797, 809 (E.D. Pa. 2007); 79 F.Appx. 503, 505 (3d Cir. 2003) (non-precedential); 140 F.3d 494, 528-29 (3d Cir. 1998).

Based on the complaint's allegations, plaintiffs have sufficiently pled a pattern of racketeering activity with particularity to set out a claim under RICO.  Yet, in the event the Court determines that additional allegations are necessary, plaintiffs respectfully request an opportunity to re-plead.

### 3. Plaintiffs' Claims Are Not Time Barred.

Defendants argue that this Court should dismiss plaintiffs' RICO claims as untimely. This argument should be rejected.

Plaintiffs are in agreement with defendants that RICO has a four year statute of limitations. *See Agency Holding Corp. v. Malley-Duff* & *Assocs., Inc.*, 483 U.S. 143, 156 (1987). In determining when the statute of limitations period begins to run, courts often rely on the "injury discovery rule." *See Slonchka*, 2005 WL 2176834, at *3; *Greenberg v. Tomlin*, 816 F.Supp. 1039, 1051 (E.D. Pa. 1993).   Under the "injury discovery rule," the statute of limitations period does not begin to run until "a plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." *Slonchka*, 2005 WL 2176834, at *3 (citations and quotations omitted).   Further, if a defendant's misrepresentations or fraudulent conduct conceals the injury, it cannot be said that a plaintiff should have discovered this injury or conduct. *See Id.*; *Moore*, 1989 WL 90176, at *5.

Also, the question of when a plaintiff discovered, or should have discovered, their injuries is a question of fact. *See Marceau*, 2006 WL 1889600, at *3.  It would therefore be premature for a court to determine, on a motion to dismiss, that a plaintiff contemporaneously discovered their injuries when the alleged scheme commenced. *Id.*

Here, plaintiffs did not know, and could not reasonably have known, that they were being injured by defendants' conduct.  Defendants' scheme of withholding or refusing to pay plaintiffs their regular or statutorily required rate of pay involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive plaintiffs. *See* Complaint ¶¶ 123-24.  Defendants repeatedly mailed false and

deceptive payroll checks, either directly to plaintiffs or between defendants' business locations. *See* Complaint ¶ 125-126. Plaintiffs relied to their detriment on the misleading payroll checks and those misleading documents were a proximate cause of plaintiffs' injuries. *See* Complaint ¶ 126.

Similarly, in *Slonchka*, the defendant issued or caused to be issued fraudulent checks while acting with intent to deceive plaintiff into believing they were making legitimate payments. 2005 WL 2176834, at *3. A subsequent audit revealed the fraudulent behavior, and the Court therefore held that plaintiff could not be said to have knowledge of their injuries until that time. *Id.* Also, in *Moore*, multiple victims of RICO violations were all subjected to misrepresentations. 1989 WL 90176, at *5. The Court stated that "[t]hese victims may very well have been unaware of a pattern involving other victims until defendant … was indicted in 1987." *Id.*

Here, because of defendants' misrepresentations, plaintiffs had no way of knowing they were being injured and that these injuries were proximately caused by the defendants' fraudulent scheme. Therefore, the statute of limitations for plaintiffs' RICO claims did not or will not accrue until they have actual knowledge or should reasonably know of their injuries, and that these injuries are caused by defendants' illegal conduct. Regardless, the question of when plaintiffs discovered, or should have discovered their injuries is a question of fact, not ripe for determination through a motion to dismiss. *See Marceau*, 2006 WL 1889600, at *3.

Defendants' reliance on *Cetel v. Kirwan Fin. Group* is misplaced, in that here plaintiffs have not received prior notice of an investigation into defendants' scheme of withholding or refusing to pay plaintiffs their required rate of pay. 460 F.3d 494 (3d Cir. 2006). In *Cetel*,

the IRS had issued a notice to plaintiffs informing them of an investigation into the conduct giving rise to the RICO claims. *Id.* at 507; *see also Moore*, 1989 WL 90176, at *4 (holding that plaintiffs could not have known of their injuries until the IRS issued notice of defendant's conduct). Here, plaintiffs have no knowledge of any prior investigation conducted by the Department of Labor, or any other agency, regarding defendants' illegal scheme.

Therefore, plaintiffs did not have knowledge, and could not reasonably have had knowledge, of defendants' scheme. Accordingly, defendants' motion to dismiss plaintiffs' RICO claims as untimely should be denied.

### E.    Plaintiffs Have Stated a Claim Under Section 1962(a).

Defendants' semantical argument that plaintiffs and class members failed to adequately allege an injury under Section 1962(a) of RICO must fail. Even a cursory review of plaintiffs' complaint reveals that plaintiffs have adequately plead a violation of this section. *See* Complaint ¶¶ 123-125.

Section 1962(a) prohibits defendants from using or investing any "income derived from a pattern of racketeering activity in the acquisition, establishment, or operation of an enterprise engaged in interstate commerce." *Westinghouse Elec. Corp.*, 1990 WL 107428, at *14. Plaintiffs have presented detailed allegations of defendants' participation in racketeering activity with the sole purpose of gaining an economic benefit at the expense of plaintiffs. *See* Complaint ¶¶ 122-135. Defendants' participation in such illegal schemes for the purpose of gaining the economic benefit rightfully due to plaintiffs for their own benefit (whether for use or investment), meets the pleading requirements for violation of Section 1962(a).

21

Based on the complaint's allegations, plaintiffs have sufficiently set out a claim under Section 1962(a) of RICO, and defendants' motion to dismiss this claim must be denied. Yet, even in the event the Court determines that plaintiffs' allegations are insufficient, plaintiffs respectfully request an opportunity to re-plead. *Train, Inc. v. Pro-Ed, Inc.*, No. CIV. A. 92-CV-5510, 1993 WL 45084, at *6 (E.D. Pa. Feb. 22, 1993).

## III.   PLAINTIFFS' ERISA CLAIMS SHOULD NOT BE DISMISSED.

Defendants claim that plaintiffs' ERISA claims should be dismissed. However, because plaintiffs have standing to assert their ERISA claims and have sufficiently pled that defendants breached their fiduciary duty under ERISA, plaintiffs' ERISA claims must stand.

### A.   Plaintiffs Have Standing to Assert ERISA Claims.

Plaintiffs have adequately alleged that they have suffered an injury-in-fact by virtue of defendants' ERISA violations. Plaintiffs do not dispute the requirements for establishing Article III standing: "[a] plaintiff must allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *See e.g., Fin. Insts. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 147 (2d Cir. 1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Further plaintiffs are in agreement that to meet ERISA's standing requirements "a civil action may be brought ... by a participant or beneficiary ..." *Pell v. E.I. DuPont de Nemours & Co., Inc.*, 539 F.3d 292, 299 (3d Cir. 2008). Plaintiffs have properly requested relief under the appropriate ERISA provision—§ 1132(a)(3) and §1104—for defendants' breach of fiduciary duties. Plaintiffs specifically alleged the conduct committed by defendant: the failure to keep adequate records and failure to credit or even investigate crediting overtime pay as compensation used to determine benefits. *See* Complaint ¶121. Because of such failures, plaintiffs were injured within the

22

meaning of the statute and thus, within the meaning of Article III. *See e.g., Financial Institutions*, 964 F.2d at 149 (finding plaintiffs had standing to bring claims for violations of ERISA § 404); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, No. MDL No. 33-1439(B), 2005 WL 1972565, at *2 (D. Or. Aug. 15, 2005) (finding plaintiffs had standing to bring claims under ERISA § 1132(a)(3)) ("[P]laintiffs have alleged that defendants 'invaded' their legal rights under ERISA by failing-in the past and present-to take certain actions required by statute, and plaintiffs seek to enjoin defendants from violating their legal rights under ERISA in the future.  Those allegations, which this Court may not look beyond, are sufficient, at least at the pleading stage.").

Defendants incorrectly claim that plaintiffs lack standing to assert an ERISA claim because there are no allegations that plaintiffs are participants in the ERISA Plan.[4]  However, defendants' semantical argument ignores several paragraphs of the Complaint which allege violations of ERISA on behalf of both plaintiffs and class members.   These allegations demonstrate that the plaintiffs and class members, as participants in the Plan, experienced the same violations.  For example,

- The Complaint defines "Plaintiffs" as "Andrew Kuznyetsov, Charles Boal and Marthann Heilman" and "Class Members" as those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  *See* Complaint ¶¶ 75-76.  The complaint alleges that defendants failed to keep records for Class Members, which therefore included the named plaintiffs.  See Complaint ¶ 120.

- The Plaintiffs and Class Members are similarly situated and their claims, including their ERISA claims, are typical of, and concurrent to, the claims of each other.  *See* Complaint ¶ 8.

---

[4]     The "Plan" is defined as Retirement Plan for Employees of West Penn Allegheny Health System. (Complaint ¶ 14).

- The claims of all Plaintiffs and Class Members are based on whether defendants' policy of not crediting employees with their non-reduced weekly wages and correct overtime compensation is a violation of ERISA.  *See* Complaint ¶ 12.

Such allegations show that both plaintiffs and class members are clearly seeking relief for themselves based on their participation in the Plans.  Therefore, based on the Complaint's allegations, plaintiffs have sufficiently set out a claim under ERISA and have met the requirements for standing.  In the event the Court determines that additional allegations are necessary, plaintiffs respectfully request an opportunity to re-plead.

**B.   Plaintiffs Have Stated a Claim for Defendants' Failure to Keep Appropriate   Records.**

Plaintiffs' Complaint adequately alleges a violation of ERISA's record keeping requirement that is redressable  under ERISA section 209(a)[5] and 502(a)(3)[6].

**1.  ERISA Section 502(a)(3) Allows Plaintiffs to Make Claims Under ERISA Section 209(a).**

 Defendants incorrectly claim that plaintiffs cannot state a claim for defendants' violation of ERISA's recordkeeping provision.  However, ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(3), affords "plan participants the right to bring suit to enjoin any violation of [Title I]."  *In re Farmers*, 2005 WL 1972565, at *3 (denying defendant's motion to dismiss plaintiffs' recordkeeping claims).  *See also Financial Institutions,* 964 F.2d at 148 ("§ 1132 essentially empowers beneficiaries to bring a civil action to redress *any* violation of the statute's fiduciary requirements").

Accordingly, courts permit plaintiffs to bring recordkeeping claims under § 1132 as it empowers plaintiffs to seek civil remedies for any violation of ERISA, including record-keeping violations.  *See e.g., Stickle,* 2008 WL 4446539, at *18 (allowing plaintiffs to state a

---

[5]      29 U.S.C. § 1059(a)
[6]      29 U.S.C. § 1132(a)(3)

recordkeeping claim under § 1132); *Rosenburg v. Int'l Bus. Machs. Corp.*, No. C 06-0430 PJH, 2006 WL 1627108, at *8 (N.D. Cal. June 12, 2006) (permitting plaintiffs' recordkeeping claims to be brought under § 1132); *In re Farmers*, 2005 WL 1972565 at *3 (same).   Thus, plaintiffs have appropriately brought the record-keeping claim under this "catchall provision" and the recordkeeping claims should not be dismissed.

Yet, in the event the Court determines that additional allegations are necessary, plaintiffs respectfully request an opportunity to re-plead.

## 2.   ERISA Section 502(a)(3) Provides The Relief Plaintiffs Seek.

Defendants incorrectly argue that the relief that plaintiffs seek is not equitable and therefore plaintiffs' claims must be dismissed.  As noted by defendants, the Complaint under the second cause of action states "Class Members bring these claims under 29 U.S.C. §1132(a)(3), which confers on plan participants the right to bring suit to enjoin any violation of ERISA §1059(a)(1)."  Complaint ¶ 139.  The Complaint is clear in that plaintiffs and class members are seeking equitable relief specifically to have all the hours worked credited by the Plan. *See* Complaint ¶ 6, 12, 13, 121.

Further, defendants in passing argue that the ERISA claims should be dismissed for failure to allege the exhaustion of administrative remedies.   However, plaintiffs are not required to exhaust administrative remedies for claims arising from violations of substantive statutory provisions such as 29 U.S.C § 1132(a)(3). *Rosenburg*, 2006 WL 1627108, at *8 ("[B]ecause... plaintiffs appropriately brought their claims under ERISA's catchall provision, this issue [of exhaustion] is moot. Exhaustion is not required under § 1132(a)(3)") (citing *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 n.1 (9th Cir. 1991)).

25

Defendants' reliance on *Premick v. Dick's Sporting Goods, Inc.,* is misplaced because there the plaintiffs sought monetary relief which is not what the plaintiffs in this case are seeking. No. 02:06cv0530, 2007 WL 141913, at *6 (W.D. Pa. Jan. 18, 2007).  Here, plaintiffs are simply requesting that the Plan properly credit them for all hours worked. Plaintiffs' claims do not stem from the non-payment of benefits, which could be remedied by the plan's administrative process.

### C.   Plaintiffs Have Stated a Claim for Breach of Fiduciary Duty under ERISA.

Despite defendants' contentions, plaintiffs have established the existence or even a breach of a fiduciary duty.  Courts have found that an employer's failure to properly credit employees for all hours worked—as a necessary task for purposes of benefit calculation—can constitute a breach of fiduciary duty.  *See Stickle,* 2008 WL 4446539, at *19 ("[u]nder ERISA, crediting hours is a fiduciary function, independent of the payment of wages); *In re Farmers,* 2005 WL 1972565, at *5; *Matthews v. ALC Partner, Inc.*, No. 2:08-cv-10636, 2008 WL 5188760, at *7 (E.D. Mich. Dec. 9, 2008).

As noted by defendants, plaintiffs specifically alleged that "defendants, while acting as fiduciaries exercising discretion over the administration of the Plans, breached their duties to act prudently and solely in the interests of the Plans' participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime to the extent overtime may be included as compensation under the Plans, or to investigate whether such hours should be credited" which are fiduciary functions.  *See* Complaint ¶ 121.

Moreover, courts have also established that the inquiry into whether or not a defendant had a fiduciary duty under an ERISA plan is primarily based on the facts of the case, and accordingly, is inappropriate for resolution on a motion to dismiss because no

26

discovery on such factual issues has yet taken place. *Rosenburg*, 2006 WL 1627108, at *3-5 (N.D. Cal. June 12, 2006) (whether an employer has a fiduciary duty under ERISA to properly pay is a primarily factual issue and such an inquiry is "therefore inappropriate for resolution on a motion to dismiss"). Accordingly, as no factual development has occurred regarding plaintiffs' ERISA claims, they should not be dismissed.

### 1. Plaintiffs Have Alleged Defendants Are Fiduciaries Under ERISA.

Despite defendants' contentions, plaintiffs have alleged that defendants are fiduciaries and have established they breached their fiduciary duty. Defendants ignore the specific provision of the Complaint stating that "defendants, while acting as fiduciaries exercising discretion over the administration of the Plans, breached their duties to act prudently and solely in the interests of the Plans' participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime to the extent overtime may be included as compensation under the Plans, or to investigate whether such hours should be credited" which are fiduciary functions. *See* Complaint ¶ 121. Further, the complaint is clear in that defendants maintain employee benefit plans and breached their fiduciary duties by failing to credit the Plans with all the hours worked by plaintiffs and class members. *See* Complaint ¶ 14, 22, 29, 34, 42, 43, 45, 47, 48, 57, 65, 66, 68, 70, 71.

### 2. Plaintiffs Were Not Required to Exhaust Administrative Remedies.

In passing, defendants argue that plaintiffs' ERISA claims should be dismissed for failure to allege the exhaustion of administrative remedies. However, plaintiffs are not required to exhaust administrative remedies for claims arising from violations of substantive statutory provisions such as 29 U.S.C. §1104(a) and 29 U.S.C §1132(a)(3). *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 253 (3d Cir. 2002) (citing *Zipf v. Am. Tel. & Tel. Co.*,

799 F.2d 889, 891 (3d Cir. 1986)) (court recognizes that administration exhaustion not required for claims brought under ERISA, 29 U.S.C. §1104(a)); *Rosenburg*, 2006 WL 1627108, at *8 (citing *Horan*, 947 F.2d at 1416 n.1) ("[B]ecause... plaintiffs appropriately brought their claims under ERISA's catchall provision, this issue [of exhaustion] is moot. Exhaustion is not required under § 1132(a)(3)").

Moreover, exhausting administrative remedies before bringing this suit would be futile and inadequate.  "The purposes of the exhaustion requirement are to '(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard and not de novo.'"  *Stewart v. NYNEX Corp.*, 78 F.Supp.2d 172, 183 (S.D.N.Y. 1999) (citing *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)).  However, if plaintiffs can make a "clear and positive" showing of futility, the "purposes behind the requirement of exhaustion are no longer served" and there is no exhaustion requirement.  *Stewart*, 78 F.Supp.2d at 183 (citing *Kennedy*, 989 F.2d at 594-595). Here, plaintiffs can make such a clear and positive showing.   As described above, plaintiffs' claims do not stem from the non-payment of benefits, which could be remedied by the plan's administrative process.   Rather, defendants' failure to properly account hours and pay employees for hours they worked has resulted in inaccurate payroll records from which credits under the Plan are derived—and therefore, there is presently no contested benefit decision to take up with the Plan.

Defendants' reliance on *Premick,* is misplaced, in that here plaintiffs and class members allegations do not "merely recast" a benefit claim.  2007 WL 141913, at *6.  Here as in *Zipf,*

plaintiffs are asserting violations of substantive provisions of ERISA.   799 F.2d at 891.

Moreover, plaintiffs are seeking equitable relief specifically a crediting of all hours worked not

a monetary benefit claim.

Further, plaintiffs presently have no administrative recourse within the Plans for a

proper accounting and crediting of such hours because defendants have not maintained the

records to do so.   As such, no administrative plan proceedings would make plaintiffs whole,

and such proceedings would be futile.   *See e.g., Stickle*, 2008 WL 4446539, at *17 (finding it

"would be futile to exhaust administrative duties with the Plan because the Plan has not

received adequate accounting").   However, this suit will provide an effective means for

determining the existence of a violation and for providing adequate remedy as the facts

require.   Requiring administrative exhaustion would not do so, and thus dismissal is not

appropriate.

Therefore, plaintiffs' ERISA claims should not be dismissed.

## IV.   PLAINTIFFS' ESTOPPEL CLAIMS SHOULD NOT BE DISMISSED.

Defendants argue that plaintiffs fail to establish an entitlement to estoppel.

Defendants' argument should fail because plaintiffs have sufficiently plead the essential

elements of estoppel, thereby putting defendants on notice of this claim.

Plaintiffs are in agreement with defendants that the "elements of estoppel are 1)

misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2)

unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting

the estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel."   *Chester

Extended Care Ctr. v. Dep't of Public Welfare*, 586 A.2d 379, 382 (Pa. 1991).

In FLSA cases, courts have held that employers are estopped from asserting a statute of limitations defense if the employee reasonably relied on their employer's representations that they would be properly compensated. *See Long v. Idaho Rural Water Assoc., Inc.*, No. CV 05-303-S-EJL, 2007 WL 1366534, at *10 (D. Idaho Mar. 29, 2007) (employer orally promised to fully compensate employee at a later date and was therefore estopped from asserting defense of statute of limitations); *Prange v. Borders, Inc.*, No. 05 C 2194, 2006 WL 2632013, at *4 (N.D. Ill. Sept. 11, 2006) (employer estopped from asserting statute of limitations defense after assuring employee that she would be paid for off-the-clock hours).

Plaintiffs' complaint clearly establishes that, through defendants' conduct and concealment of facts, plaintiffs were induced to believe they were being properly paid for all time worked.

- "Through the paystubs and payroll information it provided to employees, West Penn deliberately concealed from its employees that they did not receive compensation for all the work they performed and mislead them into believing they were being paid properly." *See* Complaint ¶ 111.

- "Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for time worked, even though Plaintiffs and Class Members were not receiving pay for all time worked including applicable premium pay." *See* Complaint ¶ 112.

- "The defendants engaged in such conduct and made such statements to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' federal rights." *See* Complaint ¶ 113.

- "As a result, employees were unaware of their claims." *See* Complaint ¶ 114.

These representations made by defendants are similar to those made in *Prange*, where the employer had assured employee that they would be properly compensated for all off-the-clock hours. 2006 WL 2632013, at *4. Also in *Long*, the employer had promised an employee that

they would be properly compensated at a later date.  2007 WL 1366534, at *10.  In each of these cases, the misrepresentations made were sufficient to invoke the doctrine of estoppel.

As a result of these inducements, plaintiffs relied to their detriment through continued employment without knowledge of the amount of wages to which they were entitled, and without knowledge of their status and rights under the FLSA.  *See* Complaint ¶ 126 ("The payroll checks were false and deceptive because they mislead Plaintiffs and Class Members about the amount of wages to which they were entitled, as well as their status and rights under the FLSA.  Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members' injuries.").  It was reasonable for plaintiffs to rely on defendants' misrepresentations that they would be compensated for all hours worked.  *See Long*, 2007 WL 1366534, at *10; *Prange*, 2006 WL 2632013, at *4.

Because plaintiffs reasonably relied on these misrepresentations, they were unaware of available remedies under the FLSA, and therefore, plaintiffs' estoppel claims should not be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be denied.

Dated: June 15, 2009

**THOMAS & SOLOMON LLP**

By:     s/ Patrick J. Solomon
        Patrick J. Solomon, Esq. *(pro hac vice)*
        NY#2716660
        J. Nelson Thomas, Esq.
        PA#209852
        Justin M. Cordello, Esq.
        PA#209838
        Michael J. Lingle, Esq. *(pro hac vice)*
        NY#3925765
         *Attorneys for Plaintiffs*
        693 East Avenue
        Rochester, New York 14607
        Telephone:  (585) 272-0540
        Facsimile: (585)272-0574
        nthomas@theemploymentattorneys.com
        jcordello@theemploymentattorneys.com
        psolomon@theemploymentattorneys.com
        mlingle@theemploymentattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2009, a copy of plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of these filings will be sent by email to all parties as addressed below, by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Robert B. Cottington, Esq.
COHEN & GRIGSBY, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222

W. Scott Hardy, Esq.
COHEN & GRIGSBY, P.C.
11 Stanwix Street
15th Floor
Pittsburgh, PA 15222

David S. Fryman, Esq.
Alexandra Bak-Boychuk, Esq.
John B. Langel, Esq.
Shanon D. Farmer, Esq.
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Edward T. Groh, Esq.
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
Plaza 1000 – Suite 500, Main Street
Voorhees, NJ 08043

/s/ Patrick J. Solomon
**Patrick J. Solomon**