IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Andrew Kuznyetsov, Charles Boal and Marthann Heilman | ) ) ) |
| Plaintiffs, | ) Civil Action No. 09-379 |
| -vs- | ) ) |
| West Penn Allegheny Health System, Inc., et al. | ) ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION AND ORDER OF COURT

Defendants urge dismissal of the second, third, fourth, and fifth counts of Plaintiffs' Complaint. For the reasons set forth in my opinion below, I am granting in part and denying in part the motion to dismiss and Plaintiffs will need to file an amended complaint.

### A. Applicable Standards

Defendants filed their motion to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[1] When deciding whether to grant or deny a 12(b)(6) motion the Supreme Court has held, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption

---

[1] F.R.Civ.P. 12(b)(1) allows a party to challenge the court's subject matter jurisdiction based on the face of the complaint or raise a factual challenge to the jurisdiction alleged in the complaint. The Third Circuit has explained that a 12(b)(1) factual challenge motion differs from a 12(b)(1) facial challenge motion and a 12(b)(6) motion. *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir.1977). In the immediate case, Defendants have raised a facial attack to the Complaint, which is akin to a 12(b)(6) challenge.

that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). (Cites and fottnote omitted). *See also*, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Most recently, in *Ashcroft v. Iqbal*, ___ U.S.___, 129 S.Ct. 1937 (2009), the Supreme Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citations omitted).

In *Iqbal,* the Court specifically highlighted the two principles which formed the basis of the *Twombly* decision: First, for the purposes of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. *Id.* at 1949-1950. Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense. *Id.* at 1950. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief. *Id.,* citing, F.R.Civ.P. 8(a)(2).

### B. Factual Background

With the above law in mind and solely for the purposes of ruling on this motion, I assume the following facts are true:

Plaintiffs have sued Defendants alleging, *inter alia*, violations under the Fair Labor Standards

Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants are a healthcare consortium, operating 56 health care facilities and centers, employing over 12,000 people and have integrated financial, computer, payroll and health records systems throughout their locations. Christopher T. Olivia is the President and CEO, while John Lasky is the Vice President of Human Resources for Defendants. Both Mr. Olivia and Mr. Lasky set the rate and method of payment for employees, established and controlled all payroll functions and systems for keeping and maintaining payroll and other employment-related records, established work schedules, and created policies relating to all of the above. (Complaint, ¶¶18-72).

Defendants' had a "meal-break deduction policy," whereby a computerized time-keeping system automatically deducted one half-hour for every shift worked from every employee's paycheck without confirming that the employee actually was relieved from duty for one half-hour. Plaintiffs claim they often were not relieved for one half-hour and/or were expected to work during this one half-hour meal break, and yet they were not compensated for this half-hour of work. (Complaint, ¶¶80-98).

Defendants had another policy requiring Plaintiffs to perform work before and/or after the end of their scheduled shifts without pay and/or appropriate pay. Finally, Defendants had a policy requiring Plaintiffs to attend training sessions but allegedly did not pay Plaintiffs appropriately for time they spent in these training sessions. (Complaint, ¶¶99-107).

By intending to devise and carry out and by actually devising and carrying out these policies which allegedly deprived employees of wages and/or appropriate pay, Plaintiffs claim Defendants designed a "scheme" to defraud them and other employees. The scheme allegedly includes

Defendants' act of intentionally and repeatedly mailing wage and payroll information to employees to mislead them about the amount of wages to which they were entitled, for the purpose of retaining the wages. (Complaint, ¶¶108-128). Plaintiffs further alleged that when employees "questioned" Defendants about non-payment or inadequate payment of wages, Defendants knowingly misled them into thinking they were <u>not</u> entitled to remuneration. (Complaint, ¶92).

### C. Dismissal of the RICO Claim

Defendants offered five reasons why Plaintiffs' RICO claim should be dismissed at this stage of the litigation. Although I decline to dismiss the claim for the reasons set forth below, Plaintiffs must file an amended complaint to address the statute of limitations issue.

**1. Preemption**

First, Defendants urge dismissal of Plaintiffs' RICO claim (count four of Plaintiffs' complaint) by arguing that Plaintiffs' FLSA claim (count one of the complaint) preempts the RICO claim. Defendants argue that the FLSA provides comprehensive and exclusive remedies and rely primarily on two cases in support of preemption: *Anderson v. Sara Lee* Corp., 508 F.3d 181 (4th Cir. 2007) and *Choimbol v. Fairfield Resorts, Inc.*, No. 05-463, 2006 WL 2631791 (E.D.Va. September 11, 2006) (hereinafter "*Choimbol II*").

In *Anderson*, the defendant required the plaintiffs to don their work clothing before walking to the time clock and clocking in for their shift. The plaintiff-workers had to clock out before doffing their work attire and donning their street clothes. Unlike the instant matter, the *Anderson* plaintiffs did <u>not</u> assert a claim under RICO, but they did raise FLSA and state law claims. The Fourth Circuit held that the FLSA provided the exclusive remedy for violations of its mandates and precluded the plaintiffs' state law claims under a theory of obstacle or conflict preemption.

In the instant matter, Defendants request dismissal of the RICO claim – another federal claim – under a preemption theory. Under the facts pled by Plaintiffs, Defendants intentionally devised a scheme (allegedly through the creation and implementation of policies and centralized business systems) enabling them to, in violation of the FLSA, withhold wages from their employees. Based on these factual allegations, Plaintiffs advanced a civil RICO claim to punish Defendants for purportedly creating, devising and carrying out a scheme to deprive Plaintiffs of their property (*i.e.* their wages) via illegal activities. This contrasts to Plaintiffs' FLSA claim which simply protects employees from receiving substandard wages and punishes the employers for failing to appropriately pay their workers. Given the variance with respect to the goals of RICO and the FLSA, I do not find the RICO claim to be duplicative of the FLSA claim. For this reason, I do not find *Anderson* persuasive.

In *Choimbol II*, the plaintiffs were current or former employees of Fairfield Resorts, Inc. See, *Choimbol II*, No. 05-463, 2006 WL 2631791, *1. The other named defendants assisted Fairfield in obtaining immigrant labor for its business. *Id.* at *1-3. The plaintiffs raised state law, RICO and FLSA claims. *Id.* at *3. Upon defendant's motion to dismiss all of the claims brought against it, the district court agreed to dismiss all but the FLSA claim finding that the FLSA preempted the plaintiffs' state law claims and that the RICO claim could similarly be barred because it sought additional remedies precluded by the FLSA. *Id.* at *6-8.

When addressing the RICO claim, the *Choimbol II* court noted that there was no case "directly on point with respect to the FLSA's preclusion of RICO claims specifically." *Id.* at *6. Despite the absence of any case on point, the district court dismissed the RICO claim as preempted by the FLSA relying on the "Fourth Circuit's consideration of whether RICO claims are preempted

by statutes comparable to the FLSA" and its own analysis of the remedial scheme of both RICO and the FLSA. *Id*. at *7. Ultimately, the *Choimbol II* court determined that the FLSA provided a "sufficiently punitive scheme to address the Defendants' misconduct" in its case and thus preempted the RICO claim. *Ibid*.

In the instant matter, Defendants failed to cite any Third Circuit precedent indicating that FLSA preempts RICO, nor did Defendants offer any cases suggesting the Third Circuit has concluded as the Fourth Circuit did in "similar" cases, nor did Defendants provide case law indicating that the Third Circuit or any district court within the Third Circuit would conclude as the Virginia district court did in *Choimbol II*. As mentioned above, based on the facts as pled, and because I find that the general goals of RICO and the FLSA vary, I do not find that the FLSA can preempt the RICO claim in this case.

### 2. Opt-in versus opt-out procedures

Defendants next argue that the RICO claim should be dismissed because the opt-in procedure related to Plaintiffs' class action FLSA claim is incompatible with the F.R.Civ.P. 23 ("Rule 23") opt-out procedure applicable to Plaintiffs' RICO claim. In support of this argument, Defendants cite to a Fifth Circuit case as well as some district court cases within the Third Circuit, including *Burkhart-Deal v. Citifinancial, Inc.*, No 7-1747. 2008 WL 2357735 (W.D. Pa. June 5, 2008), an opinion I rendered. In the cases cited by Defendants, including *Burkhart-Deal,* the courts held that collective FLSA actions are "inherently incompatible" with Rule 23 <u>state-law</u>, opt-out class actions for overtime pay and would undermine Congress' intent in implementing an opt-in requirement for FLSA actions.

In *De Ascencio v. Tyson Foods*, 342 F.3d 301 (3d Cir. 2003), a group of plaintiffs brought

6

a representative action under the FLSA along with a state law claim under Pennsylvania's Wage Payment and Collection Law ("WPCL"). Reversing the district court's decision to grant the plaintiffs' class certification request, the Third Circuit held that the district court could not exercise supplemental jurisdiction over the state law claim which fell under Rule 23 requiring an opt-out procedure. *Id.* at 312. In reaching this conclusion, the Third Circuit acknowledged that although a common nucleus of operative fact existed between the state WPCL claim and the federal FLSA claim, it held that the district court should have declined to exercise supplemental jurisdiction under 28 U.S.C. §1367 and suggested the WPCL claim proceed in state court. *Id.* at 310. However, the *De Ascencio* Court specifically pointed out that a federal court "could have subject matter jurisdiction over two federal claims, one requiring opt-in and the other opt-out." *Id.* at 310, n. 14.

Upon review of the complaint before me, Plaintiffs have asserted this court has subject matter jurisdiction – not supplemental jurisdiction – under 28 U.S.C. §§ 1341, 1343 and §1337 over all of the federal claims raised by Plaintiffs (including the FLSA and RICO claims). At this juncture, this court maintains original jurisdiction over Plaintiffs' properly pled federal claims. Notably, Plaintiffs have not brought any state law, opt-out claims like the plaintiffs in *Burkhart-Deal* or *De Ascencio*. Moreover, given the Third Circuit's footnote in *De Ascencio*, it appears as though the Third Circuit has considered the possibility of a case such as one the presented here where jurisdiction over more than one federal claim exists, but each claim requires different class identifying procedure. For these reasons, I presently decline to dismiss the RICO claim as incompatible with the FLSA's opt-in procedure.[2]

---

[2] Plaintiffs did not request class certification for purposes of their RICO claim or any claim other than their FLSA claim. As of this writing, Plaintiffs have not obtained final class certification on the FLSA claim.

**3 -4. Frivolity and/or failure to properly or timely state a claim**

Defendants next attempt to dismiss Plaintiffs' RICO claim for frivolity and/or for failure to state a claim upon which relief can be granted. Unless the plaintiff fails to properly plead facts vital to establishing one or more of the RICO statutory requirements, the claim cannot be dismissed. *See, Liggon-Redding v. American Securities Ins*. 297 Fed.Appx. 81 (3d Cir. 2008) citing, *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002) (when a complaint is dismissed for failure to state a claim upon which relief may be granted, plaintiff should be granted the opportunity to amend the complaint unless amendment would be inequitable or futile.)

Under RICO, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985). Defendants argue that Plaintiffs failed to properly plead an "enterprise" and a "pattern of racketeering activity."

Starting with Defendants' enterprise argument, Defendants suggest that Plaintiffs failed to distinguish between "persons" and "enterprise". An enterprise can include "any individual, partnership, corporation, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It is a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

A "person" alleged to be liable under RICO must be distinct from the "enterprise". *See, Cedric Kushner Promotions, Ltd. v. King* 533 U.S. 158, 161-162, 121 S.Ct. 2087, 2090 (2001) (To establish liability under RICO one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different

name). In *Cedric*, the Court noted:

> The Court has held that RICO . . . protects the public from those who would unlawfully use an "enterprise" (whether legitimate or illegitimate) as a "vehicle" through which "unlawful ... activity is committed," [cite omitted]. A corporate employee who conducts the corporation's affairs through an unlawful RICO "pattern ... of activity," § 1962(c), uses that corporation as a "vehicle" whether he is, or is not, its sole owner.

*Id.* 533 U.S. at 164-165, 121 S.Ct. at 2092. The Court concluded by stating:

> ...[The RICO statute's] history . . . refers to the need to protect the public from those who would run "organization[s] in a manner detrimental to the public interest." S.Rep. No. 91-617, at 82. This latter purpose, as we have said, invites the legal principle we endorse, namely, that in present circumstances the statute requires no more than the formal legal distinction between "person" and "enterprise" (namely, incorporation) that is present here.

*Id.* 533 U.S. at 165, 121 S.Ct. at 2092.

In *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989), the Third Circuit held that to adequately plead a 18 U.S.C. §1962(c) claim, the plaintiffs must allege, in addition to injuries under 18 U.S.C. §1964(c), that the defendants as "persons" were employed by or associated with an "enterprise." *Id.* at 358. In *Rose*, the plaintiffs alleged that a defendant was both an enterprise according to §1961(4), and a person according to §1961(3). The *Rose* plaintiffs maintained that the defendant should be considered an enterprise insofar as it served as a vehicle for some individuals' predicate acts of racketeering, but as a person insofar as it conducted the affairs of the county as an enterprise. The *Rose* Court noted that one of its earlier decisions, *B.F. Hirsch v. Enright Ref'g Co.*, 751 F.2d 628 (3d Cir. 1984) – which Defendants in the instant case cite as support of their position on this issue – required separate person and enterprise identity for purposes of §1962(c) to fulfill "the Congressional scheme to orient section 1962(c) toward punishing the infiltrating criminals rather than the legitimate corporation which might be an innocent victim of the racketeering activity in some circumstances."

*Hirsch*, 751 F.2d at 634. Notwithstanding the *Hirsch* decision, the *Rose* Court held:

> We see nothing in our decisions that would necessarily preclude an entity from functioning both as an "innocent victim" of certain racketeering activity, and thus be the enterprise under section 1962(c), and as a perpetrator of other such activity, and thus be a person under that subsection. The complaints describe Asher and Bartle as "acting for" or as "agents" of the party in the commission of alleged racketeering acts. See Rose Amended Complaint ¶¶ 12, 15, 27; Hill Amended Complaint ¶¶ 11, 14, 26; Reed Amended Complaint ¶¶ 18, 21. These acts would have victimized the county "enterprise" (and its residents) as well as the plaintiffs. Therefore, we hold that the plaintiffs are not barred from alleging that the party is liable under section 1962(c).

*Id.* at 359.

Based on the rationale and holdings in *Cedric* and *Rose*, I find that Plaintiffs in the instant matter have presented enough information to identify the "persons" and the "enterprise" at issue here and comply with the definitions set forth in 18 U.S.C. §§1961 (3) and 1961 (4) as well as the case law governing this issue.

Defendants next argue that Plaintiffs' "pattern of racketeering activity" allegations fail to comply with the specificity requirements of F.R.Civ.P. 9(b).

The Third Circuit has held that racketeering activity requires at least two predicate acts of racketeering, which may include mail fraud under 18 U.S.C. § 1341. *Lum v. Bank of America,* 361 F.3d 217, 223. (3d Cir. 2004), *cert den.* 543 U.S. 918, 125 S.Ct. 271 (Oct 4, 2004). The *Lum* Court went on to note that "[a] scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." *Ibid.* When a plaintiff relies on mail fraud as a basis for a RICO violation, the allegations of fraud must comply with F.R.Civ.P. 9(b) which requires allegations of fraud to be pled with specificity. *Ibid.* Plaintiffs may meet this requirement by

pleading the "date, place or time" of the fraud, **or** through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* at 224, *citing*, *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984) (emphasis added).

Again, I find that Plaintiffs in the instant matter have presented enough information to adequately explain how the alleged fraud was perpetrated by the Defendants on the Plaintiffs. By way of example, the Complaint alleges that a "meal-break deduction policy" was implemented which automatically deducted one half-hour for a meal break for each shift an employee worked, even when an employee was unable or not permitted to stop working for the half-hour. Complaint, ¶¶ 79-80. Plaintiffs allege that such a policy and automatic deduction are illegal and that defendants knowingly and willfully withheld these half-hour wages from Plaintiffs. Complaint, ¶¶ 81-91. Plaintiffs also assert that when they questioned Defendants' policy of non-payment for the half-hour meal breaks that Plaintiffs worked, Defendants "affirmatively stated" that they could not be paid for such time, and even though Defendants knew the opposite to be true. Complaint, ¶92, 111-114. Because Plaintiffs' paystubs and payroll information established that a half-hour wage was deducted even when Plaintiffs worked through the half-hour meal break they were further misled by Defendants, and because the paystubs or payroll information was either mailed directly to the Plaintiffs or among the various Defendants and ultimately delivered to Plaintiffs, a RICO violation occurred. Complaint, ¶¶125-134, 143-145. Given these allegations, I find that Plaintiffs pled their fraud claim with the required specificity of F.R.Civ.P. 9(b) and satisfied the *Seville* test.

Finally, although all parties agree that a RICO claim has a four-year statute of limitations, Defendants' argue that Plaintiffs are time-barred from bringing a RICO claim because Plaintiffs failed to plead how and when they discovered the alleged illegal practices that started the running

of the statute. Defendants base this argument, in part, on paragraph 125 of the Complaint which suggests that the alleged mail fraud took place over the last ten years.

Plaintiffs had four years from the date they knew or should have known they were injured to file their RICO claim. *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000), *cert. den.*, 533 U.S. 929, 121 S.Ct. 2551 (June 25, 2001), (the injury discovery rule, not the injury occurrence rule, sets the accrual date for a RICO claim). The Complaint fails to properly provide any sort of notice concerning the requisite time frame or sequence of events from which the four-year statue of limitations would run. Again, by way of example, I note that paragraph 92 of Plaintiffs' complaint alleges that employees "questioned" Defendants about the meal break policy and Defendants "affirmatively stated" that employees could not be paid for working during their meal break. The Complaint fails to mention when this "questioning" occurred nor when the Defendants "affirmatively stated" that Plaintiffs could not receive remuneration for all meal breaks worked. Since I have found paragraph 92 of the complaint to be the nexus of the alleged fraud, Plaintiffs need to plead the discovery date of their alleged injury and must file an amended complaint to do so since their complaint is completely devoid of any date from which the statute of limitations could start to run.[3]

**5. Failure to state a claim under Section 1962(a)**

As mentioned above, based on the facts as pled, and the foregoing law and authority, I find that Plaintiff's RICO claim meets federal pleading requirements and I decline to dismiss the RICO claim in this case.

---

[3] Although Plaintiffs' brief in opposition to Defendants' motion to dismiss suggests their belief that the four-year statute of limitations would run from the date Plaintiffs knew or should have known of the RICO "scheme," I disagree, noting that the *Forbes* opinion unequivocally states that the four years begins to run from the date Plaintiffs knew or should have known of their injury; which, in this case, Plaintiffs have identified as lack of payment and/or inadequate pay for time worked.

**D. Dismissal of the ERISA Claim**

Defendants offered three reasons why Plaintiffs' ERISA claim should be dismissed. I decline to dismiss the claim for the reasons set forth below, but Plaintiffs must file an amended complaint as described in greater detail below.

**1. Standing**

Defendants break this argument down into two components, arguing that Plaintiffs have neither statutory standing nor constitutional standing to bring an ERISA claim and thus, urge dismissal of the ERISA claim. Starting with Defendants' statutory standing argument, Plaintiffs argue that it is inherent throughout their complaint that the named plaintiffs and class members are "participants" in the retirement plan.[4] I agree that Plaintiffs failed to specifically plead that they were plan participants, beneficiaries or fiduciaries, and ERISA requires that a person who brings a civil action under the statute be a participant, beneficiary or fiduciary. 29 U.S.C. §1132(a)(1), (a)(3). Accordingly, when Plaintiffs amend their complaint to address the statute of limitations issue with respect to their RICO claim, they should also amend the ERISA portion of their complaint to more clearly elucidate their position and the position of the other class members under ERISA. Because I am permitting Plaintiffs to amend their complaint with respect to their ERISA claim, I decline to address Defendants' constitutional standing argument at this juncture.

**2. - 3. "Failure to keep accurate records" claim and breach of fiduciary duty**

In their "failure to keep accurate records" argument, Defendants assume that Plaintiffs seek retirement benefits or retirement plan contributions as damages and argue that such damages are not redressable under either 29 U.S.C. §209(a) or 29 U.S.C. §502(a)(3). Plaintiffs do not challenge this

---

[4] Paragraph 14 of the complaint defines the "plan" as a retirement plan.

assumption, and although this may be a correct assumption, I have ordered Plaintiffs to file an amended complaint to specifically plead whether they were plan participants, beneficiaries or fiduciaries. Accordingly, because I am permitting Plaintiffs to amend their complaint with respect to this point, I decline to address Defendants' "failure to keep accurate records" argument at this time. Similarly, I defer ruling on Defendants' argument that Plaintiffs failed to state a claim for breach of fiduciary duty.

### E. Dismissal of the "Estoppel Claim"

Finally, Plaintiffs' complaint attempts to assert a cause of action for estoppel. Based upon my review of the complaint as a whole and based on the parties' respective arguments on this issue, I concur with Defendants' position. Given the basis for Plaintiffs' assertion of estoppel as a claim, estoppel serves as a shield not a sword and thus, the claim will be dismissed. I remain unpersuaded by Plaintiffs' argument citing to *Chester Extended Care Ctr v. Department of Public Welfare*, 586 A.2d 379, 382 (Pa. 1991), a factually distinguishable matter.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Andrew Kuznyetsov, Charles Boal and<br>Marthann Heilman<br><br>        Plaintiffs,<br>  -vs-<br><br>West Penn Allegheny Health System, Inc., et al.<br><br>        Defendants. | )<br>)<br>)<br>) Civil Action No. 09-379<br>)<br>)<br>)<br>)<br>) |

AMBROSE, Chief District Judge.

## **ORDER**

AND NOW, this 20th day of July, 2009, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motion to Dismiss is GRANTED in part and DENIED in part. The Fifth Count of the Complaint is dismissed. Plaintiff is instructed to file an amended complaint by August 4, 2009 to clarify the Second, Third and Fourth Counts as more particularly discussed in the accompanying opinion.

                                    BY THE COURT:

                              s/ Donetta W. Ambrose
                              Donetta W. Ambrose,
                              Chief U.S. District Judge