IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREW KUZNYETSOV, et al.,

Plaintiffs,

vs.

WEST PENN ALLEGHENY HEALTH SYSTEM, INC., et al.,

Defendants.

Civil Action No. 9-379

AMBROSE, District Judge

**OPINION**
**AND**
**ORDER OF COURT**

Pending before the court is a Motion to Dismiss the Amended Complaint's Second, Third and Fourth Causes of Action (Docket No. 156) filed by Defendants, West Penn Allegheny Health System, Inc., West Penn Allegheny Health System, Inc. t/d/b/a Allegheny General Hospital, West Penn Allegheny Health System, Inc. t/d/b/a/ The Western Pennsylvania Hospital, Alle-Kiski Medical Center, Canonsburg General Hospital, Christopher T. Olivia, John Lasky, and Retirement Plan for Employees of West Penn Allegheny Health System. Plaintiffs filed a Brief in Opposition thereto. (Docket No. 186). Thereafter, Defendants filed a Motion for Consideration of Additional Authority. (Docket No. 200). Said Motion was granted. (Docket No. 201). After careful consideration of the same, Defendants' Motion to Dismiss the Amended Complaint's Second, Third and Fourth Causes of Action (Docket No. 156) is granted as more fully set forth below.

**OPINION**

## I. Background

Plaintiffs filed a Complaint on April 1, 2009. (Docket No. 1). Thereafter, Defendants filed a Motion to Dismiss. (Docket No. 79). I granted in part and denied in part said motion. (Docket

No. 118). Specifically, I ordered that the Fifth Count of the Complaint was dismissed. I also ordered Plaintiffs to file an Amended Complaint to clarify the Second, Third and Fourth Counts. *Id.*

Plaintiffs filed an Amended Complaint on August 11, 2009. (Docket No. 125). The first count is a claim under the the Fair Labor Standards Act ("FLSA"). *Id.* The second count is a claim under the Employee Retirement Income Security Act ("ERISA") for failure to keep accurate records. *Id.* The third count is a claim under ERISA for breach of fiduciary duty and the fourth count is a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* Defendants now move to dismiss the Second, Third and Fourth Counts of the Amended Complaint. (Docket No. 156). The issues are now ripe for review.

## II. Legal Argument

### A. Legal Standard

Defendants filed their Motion to Dismiss pursuant to Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. When deciding whether to grant or deny a 12(b)(6) motion the Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007) (cites and footnote omitted); *see also*, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Most recently, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at1949 (citations omitted).

In *Iqbal,* the Court specifically highlighted the two principles which formed the basis of the *Twombly* decision: First, for the purposes of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. *Id.* at 1949-1950. *See also, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d. Cir. Aug. 18, 2009). Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense. *Id.* at 1950. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief. *Id.,* citing, F.R.Civ.P. 8(a)(2).

**B. RICO (Fourth Cause of Action)**

The original Complaint in this case was filed on April 1, 2009. (Docket No. 1). Previously, in ruling on Defendants' Motion to Dismiss the RICO claim in the original Complaint, I held the following:

> [A]lthough all parties agree that a RICO claim has a four-year statute of limitations, Defendants argue that Plaintiffs are time-barred from bringing a RICO claim because Plaintiffs failed to plead how and when they discovered the alleged illegal practices that started the running of the statute. Defendants base this argument, in part, on paragraph 125 of the Complaint which suggests that the alleged mail fraud took place over the last ten years.
>
> Plaintiffs had four years from the date they knew or should have known they were injured to file their RICO claim. *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000), *cert. den.*, 533 U.S. 929, 121 S.Ct. 2551 (June 25, 2001), (the injury discovery rule, not the injury occurrence rule, sets the accrual date for a RICO claim). The Complaint fails to properly provide any sort of notice concerning the requisite time frame or sequence of events from which the four-year statue of limitations would run. Again, by way of example, I note that paragraph 92 of Plaintiffs' complaint alleges that employees "questioned" Defendants about the meal break policy and Defendants "affirmatively stated" that employees could not be paid

for working during their meal break. The Complaint fails to mention when this"questioning"occurred nor when the Defendants "affirmatively stated" that Plaintiffs could not receive remuneration for all meal breaks worked. Since I have found paragraph 92 of the complaint to be the nexus of the alleged fraud, Plaintiffs need to plead the discovery date of their alleged injury and must file an amended complaint to do so since their complaint is completely devoid of any date from which the statute of limitations could start to run.

(Docket No. 118, pp. 11-12). On August 11, 2009, Plaintiffs filed an Amended Complaint. (Docket No. 125). Paragraph 92 now states as follows:

92. When questioned by employees about the Meal Break Deduction Policy, the defendants affirmatively stated that the employees were being fully paid for the work time for which they were entitled to be paid, even though defendant knew compensable work time was being excluded from the employees' pay. Such conversations occurred with Plaintiffs on a number of occasions including in the winter of 2007-2008 on three or four occasions.....

(Docket No. 125, ¶92). Again, Defendants seek dismissal of Plaintiffs' RICO claim based on the statute of limitations citing three reasons: 1) The Amended Complaint fails to address when Plaintiffs discovered their alleged injuries; 2) The RICO claims are time-barred because they were on inquiry notice of their alleged injuries more than four years before they filed the Complaint; and 3) Plaintiffs cannot demonstrate that each paycheck is a new and independent injury or the existence of fraudulent concealment. (Docket No. 157, pp. 6-14).

In opposition, Plaintiffs rely on the "separate accrual rule" for this theory as set forth in *Annulli v. Panikkar,* 200 F.3d 189, 197 (3d Cir. 1999). Specifically, Plaintiffs argue that each pay check is a separate injury such that the applicable statute of limitations period begins anew for each and every pay check. (Docket No. 186, pp. 4-14). Defendants suggest that the separate accrual rule is not recognized in this Circuit since *Annulli*'s statute of limitations analysis was abrogated by *Rotella v. Woods,* 528 U.S. 549 (2000). While *Rotella* did abrogate the statute of limitations analysis in *Annulli*, I do not read it to abrogate the separate accrual rule.

Under the separate accrual rule, each injury must be new and independent, and not a continuation, accumulation or recharacterization of an old injury. *Matthews v. Kidder, Peabody*

*& Co., Inc.,* No. Civ.A. 99-85, 2000 WL 33726916, *10, n. 17 (W.D. Pa. August 18, 2000). Thus, contrary to Defendants' position (Docket No. 157, p. 13), it is not the policy but the injury that is reviewed.

In this case, I find that the receipt of each pay check is a new and independent injury and not simply a continuation of an old injury since each paycheck would reflect a separate and discrete pay period during which Plaintiffs may have been paid all of the hours for which they believed they are entitled or not. Each pay period with its own pay statement is a separate and discrete transaction. The injury of lack of payment and/or inadequate pay for time allegedly worked does not flow from a previous pay period but only from that particular pay period. Therefore, the separate accrual rule applies in this case. As discussed below, however, this does not save Plaintiffs' RICO claim.

To be clear, the RICO statute of limitations begins to run when Plaintiffs knew or should have known of their injury and the source of their injury. *Prudential Ins. Co. of America v. U.S. Gypsum Company,* 359 F.3d 226, 233 (3d Cir. 2004). Nothing more is "'required to trigger the running of the four-year statute of limitations period [of a civil RICO claim].'" *Id., quoting, Forbes v. Eagleson,* 228 F.3d 471, 485 (3d Cir. 2000). The Complaint in this case was filed on April 1, 2009. (Docket No. 1). Thus, to be timely, the Plaintiffs had to know or should have known of their alleged injury (lack of payment and/or inadequate pay for time worked) and the source no earlier than April 1, 2005. If they knew or should have known of their injuries before April 1, 2005, then their claims are untimely.

To evaluate the claim, I begin with a review of the Amended Complaint. In so doing, I agree with Defendants that the language "occurred on a number of occasions including in the winter of 2007-08 on three or four occasions" does not state when Plaintiffs first discovered that they were not being paid for meal breaks and does not address when Plaintiff first discovered their alleged injuries concerning the "Unpaid Preliminary and Postliminary Work Policy" or the "Unpaid

Training Policy." For all I know, this allegation could be referring to two employees talking to their supervisors about the same instances over and over again that originally happened prior to April of 2005. Moreover, in paragraph 126 of Amended Complaint, Plaintiffs vaguely assert that the "mailings occurred on a regular basis and more than 100 such mailing occurred in the last 10 years." (Docket No. 125, ¶126). Simply put, after having been given the chance to amend their complaint once before for this exact reason, I find that Plaintiffs have failed again to define when the injuries occurred.

In fact, Plaintiffs seem to concede this point when they allege that they "did not discover in the relevant statute of limitations period that the defendants were not paying them properly." (Docket No. 125, ¶139). Therefore, I can only assume that none of the Plaintiffs discovered they were injured within the relevant statute of limitations period.

Presumably aware (given the concession above) that the statute of limitations for their RICO claim began prior to April 1, 2005, Plaintiffs argue that their claims are timely under the estoppel principles of equitable tolling and fraudulent concealment. (Docket No. 186, pp. 14-17; *see also,* Docket No. 125, ¶¶111-114, 125-127, 138-146).

> In order to invoke the doctrine of fraudulent concealment, plaintiffs must demonstrate that (1) the defendants fraudulently concealed facts that are the basis of plaintiffs' claims, and (2) the plaintiffs failed to discover those facts within the statutory period, despite (3) the exercise of due diligence.
>
> * * *
>
> Equitable tolling may apply where: (1) the defendant actively misled the plaintiff respecting his cause of action; (2) the plaintiff in some extraordinary way was prevented from asserting his rights; or (3) the plaintiff timely asserted his rights but in the wrong forum. *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125-1126 (3d Cir.1997). Thus, the distinction between fraudulent concealment and equitable tolling is in the type of activity by the defendant that affects the plaintiff's actions.

*Matthews*, *29 (footnotes omitted).

In this case, Defendants take issue only with whether Plaintiffs acted with due diligence.

(Docket No. 157, p. 14). "[T]he tolling lasts only 'until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action....'" *Forbes,* 228 F.3d at 487, *quoting Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1392 (3d Cir.1994). There is no argument that Plaintiffs did not receive their pay statements. The pay statements set forth the number of hours for which they were being paid. *See,* Ex. A, Docket No. 157-2.[1] Thus, contrary to assertions by Plaintiffs otherwise (Docket No. 125, ¶127), the pay statements would not have been misleading since the pay statements would have specifically put Plaintiffs on notice on the date of the receipt of their pay statements that they were not being paid the full amount they thought they should have been paid for that particular pay period. At a minimum, Plaintiffs should have made inquiries regarding the same at the point in time when they received their pay statements. Unfortunately, Plaintiffs' Amended Complaint is devoid of any facts such that I can say

---

[1]Generally, in considering a motion to dismiss based on Rule 12(b)(6), a district court may not consider matters "outside the pleading." Fed. R. Civ. P. 12(b)(6). Pleadings are defined by the Federal Rules to include a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third-party answer. Fed. R. Civ. P. 7(a). Thus, when ruling upon a 12(b)(6) motion, a district court is limited to considering the facts as they are alleged in the complaint, anything properly attached thereto and matters of public record. Fed R. Civ. P. 12(b)(6), 10(c).

Nonetheless, "when [a] plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762-63 (2d ed. 1990).

> A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

*Pension Benefit Guar. Corp., v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The rationale behind this rule is that the document is not "outside" the complaint because the complaint specifically refers to the document. Presumably, therefore, the plaintiff is on notice of the contents of the document. *Id*. at 1196-97.

The Amended Complaint refers to the fraudulent pay statements Plaintiffs received but which are not attached to the Amended Complaint. (Docket No. 125). Plaintiffs have not questioned the authenticity of Exhibit A, a pay statement. Thus, I will consider the same when ruling upon Defendant's Motion to Dismiss.

it is not merely possible, but is plausible, that the investigations performed by Plaintiffs occurred at that point in time. *Twombly, supra; Iqbal, supra.* Plaintiffs have alleged only that they questioned Defendants regarding one of the three policies at issue here "on a number of occasions including in the winter of 2007-08 on three or four occasions." (Docket No. 125, ¶92). There is no reference to when they first questioned them, what they asked, who they asked, etc. This vague reference fails to show that Plaintiffs acted with reasonable or due diligence in pursuing the underlying cause.

Further, I reject Plaintiffs' assertion that they lacked legal sophistication. (Docket No. 125, ¶141). It should have been plainly obvious from the face of their pay statements that they were receiving less compensation then expected. Thus, their lack of sophistication of the law does not excuse their failure to investigate their alleged injuries with reasonable diligence.

As set forth above, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at1949 (citations omitted). References in the Amended Complaint pointed to by Plaintiffs are completely conclusory, vague and have no underlying facts to support them. (*See,* Docket No. 125, ¶¶ 111-114, 125-126, 138-146).

Based on the above, I find estoppel in the form of equitable tolling or fraudulent concealment is not warranted. Therefore, in the face of vague, ambiguous and conclusory amended allegations and concessions, where they basically acknowledge that they did not discovery their injuries during the period of limitations (Docket No. 125, ¶139), I find that Plaintiffs' RICO claim is time barred.

**C. <u>ERISA (Second and Third Causes of Action)</u>**

Plaintiffs generally allege that Defendants violated ERISA by failing to keep accurate records regarding unpaid meal breaks, and that, relatedly, Defendants violated their fiduciary duties under ERISA. *See*, Amended Complaint, Docket No. 125, ¶79-99, 119-122, 152, 154. Defendants seek to dismiss the ERISA counts based on four arguments: 1) Plaintiffs lack constitutional standing to assert ERISA claims; 2) Plaintiffs cannot maintain a "failure to keep accurate records" claim under ERISA; 3) Plaintiffs fail to identify fiduciaries performing ERISA fiduciary duties; and 4) Plaintiffs failed to exhaust their administrative remedies. (Docket No. 157, pp. 15-28). Additionally, Defendants request that I consider the opinions of Judge Bissoon in the cases of *Henderson v. UPMC, et al.,* Civ. A. No. 09-187J (W.D. Pa. Jan. 11, 2010) and *Camesi v. University of Pittsburgh Medical Center, et al.,* Civ. A. No. 09-85J (W.D. Pa. Jan. 11, 2010). (Docket No. 200).

I have considered the opinions of *Henderson* and *Camesi* and find them persuasive on the issues of whether Plaintiffs' causes of action under ERISA should be dismissed. The *Henderson* and *Camesi* plaintiffs assert nearly identical claims under ERISA for failure to keep accurate records and for breach of fiduciary duty. *Compare*, Docket No. 125, *with Henderson,* Docket No. 32 and *Camesi*, Docket No. 266. In fact, plaintiffs' counsel in *Camesi*, also represent Plaintiffs in this action. *Id.* Like the case at hand, the claims in those cases arose out of alleged failures to credit retirement plans with all hours worked through meal breaks. *Compare,* Docket No. 125, ¶79-99, 119-122, 152, 154; *with Henderson,* Docket No. 32, ¶¶22-44, 77-86, and *Camesi,* Docket No. 266, ¶¶ 79-98, 129-132, 150, 152.

In *Henderson* and *Camesi,* Judge Bissoon dismissed plaintiffs' ERISA claims for failure to keep accurate records and breach of fiduciary duties. *Henderson,* Docket No. 51 and *Camesi,* Docket No. 345. In doing so, Judge Bissoon recognized that there is conflicting jurisprudence

regarding the issues of whether accurate record keeping and a breach of fiduciary duty could stand under similar factual scenarios, but concluded that the *Mathews v. ALC Partner, Inc.,* 2009 WL 3837249 (E.D. Mich. Nov. 16, 2009) opinion was well-reasoned and more persuasive than those cases cited by plaintiffs. *Henderson*, pp. 2-6. Quoting from *Mathews,* Judge Bissoon pointed out that the issue was whether the plan documents tied ERISA benefits to wages earned or wages actually paid. *Id.*

> [The p]laintiffs . . . bring ERISA claims predicated on [the defendants.] failure to . . . credit . . . additional hours worked (but not compensated for) to their accounts in the ERISA benefit plans, with the result that the [p]laintiffs. retirement benefits . . . are or will be smaller than they should be according to plan documents. [Generally, the court agrees with the defendants that their alleged] decision not to pay . . . employees for all hours worked, and therefore credit the retirement account for all hours worked, was a business decision, not an ERISA fiduciary decision, so the failure to credit the plan for all hours worked could not have breached any fiduciary duty. . . .
>
> But the [c]ourt also [concludes] that if the [defendants.] retirement plan determined an employee's ERISA benefits based on the number of hours worked or wages earned, and not merely on wages actually paid, then the decision whether to credit hours worked -- even unpaid hours -- would be a fiduciary decision under ERISA.

*Henderson,* Docket No. 51, p. 2, *quoting, Mathews,* at *1 (emphasis in original).

In *Mathews,* the court held that the defendants owed no fiduciary or recording obligations under ERISA for hours allegedly worked but not paid. *Id.* at *5-6. This was based on the fact that the benefits were "defined in terms of 'Compensation,'" and that "Compensation" was defined by what was reflected in the plaintiffs' W-2 forms. *Id.* at *4-5. "A Form W-2 includes [w]ages, tips, and other compensation an employee is actually paid." *Id.* at *5. Additionally, "[w]ages are defined" under the Internal Revenue Code ("IRC") as "remuneration" (which means "to pay"). *Id.*

> In reaching this conclusion, the *Mathews* Court rejected the plaintiffs' reliance on plan provisions regarding "Hours of Service." *See id.* at *6. Although "Hour [sic] of Service" was defined as "each hour for which an employee [wa]s directly or indirectly compensated or entitled to compensation," the court found that this provision neither "preclude[d] [nor] contradict[ed the] conclusion that plan benefits [we]re tied to compensation, which [wa]s tied to wages actually paid." *Id.* at *7. "The relevant inquiry [wa]s the meaning of the word "Compensation," and "Hours of Service" whatever its meaning, [wa]s not relevant to the question of whether ERISA

benefits [we]re tied to wages earned or wages paid." *Id.*

*Henderson,* at p. 3.

Judge Bissoon found her cases to be similar in all respects to *Mathews.* *Id.* I too find *Mathews* to be similar in all respects to the instant case and will apply it.

In this case, the plan documents[2] define "Compensation" as "annual wages...as reported on your [IRS] Form W-2...." Docket No. 200, Ex. C, p. 10; Ex. D; Ex. E, p. 7; Ex. F, p. 10; Ex. G, p. 10). Thus, like in *Henderson, Camesi,* and *Mathews,* the plan documents in this case tie ERISA benefits to compensation paid and not to hours worked. Therefore, Defendants in our case, as in *Henderson, Camesi,* and *Mathews,* violated "neither their recording nor fiduciary duties under ERISA because those obligations related to 'Compensation' that was paid, not hours allegedly worked by Plaintiffs but not paid." *Camesi,* Docket No. 345, p. 1.

Plaintiffs urge that dismissal is premature and also request the opportunity to re-plead.

---

[2]Generally, in considering a motion to dismiss based on Rule 12(b)(6), a district court may not consider matters "outside the pleading." Fed. R. Civ. P. 12(b)(6). Pleadings are defined by the Federal Rules to include a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third-party answer. Fed. R. Civ. P. 7(a). Thus, when ruling upon a 12(b)(6) motion, a district court is limited to considering the facts as they are alleged in the complaint, anything properly attached thereto and matters of public record. Fed R. Civ. P. 12(b)(6), 10(c).

Nonetheless, "when [a] plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762-63 (2d ed. 1990).

> A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

*Pension Benefit Guar. Corp., v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The rationale behind this rule is that the document is not "outside" the complaint because the complaint specifically refers to the document. Presumably, therefore, the plaintiff is on notice of the contents of the document. *Id*. at 1196-97.

The Amended Complaint refers to the plan documents throughout but does not attach them. (Docket No. 125). Plaintiffs have not questioned the authenticity of the documents. Thus, I will consider the same when ruling upon Defendant's Motion to Dismiss.

(Docket No. 186, pp. 20, 22-23). In *Henderson* and *Camesi*, Judge Bissoon dismissed plaintiffs' ERISA claims for failure to keep accurate records and breach of fiduciary duties with prejudice because she had the relevant plan documents and, thus, "[n]o amount of additional inquiry can save Plaintiffs' ERISA claims.". See, *Henderson,* Docket No. 51, at p. 7 and *Camesi,* Docket No. 345, p. 2). I agree with Judge Bissoon, reject Plaintiffs' request to re-plead again, and dismiss Plaintiffs' ERISA claims with prejudice.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW KUZNYETSOV, et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Civil Action No. 9-379 |
| WEST PENN ALLEGHENY HEALTH SYSTEM, INC., et al., | ) | |
| Defendants. | ) | |

AMBROSE, District Judge

**ORDER OF COURT**

AND now, this 16th day of February, 2010, upon consideration of Defendants' Motion to Dismiss (Docket No. [156]), it is ordered that said motion [156] is granted. To that end, it is further ordered that Plaintiffs' ERISA claims (the Second and Third Counts of the First Amended Complaint) are dismissed with prejudice and Plaintiffs' RICO claim (the Fourth Count) is dismissed.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. District Judge